For the reasons assigned, the judgment of the trial court is affirmed.

126 So.2d 341

Roy RANDOLPH et al.

v.

VILLAGE OF TURKEY CREEK et al.

No. 45394.

Jan. 9, 1961.

Rehearing Denied Feb. 15, 1961.

Donald J. Tate, Tate & Tate, Mamou, for defendant-appellant.

R. Boatner Howell, Jr., Baton Rouge, for plaintiffs-appellees.

SUMMERS, Justice.

Plaintiffs, Roy Randolph and Jimmy Russell, are the owners and operators of a cafe and are engaged in selling beer containing less than three and two-tenths per cent alcohol by weight within the corporate

limits of the Village of Turkey Creek. The defendants are the Village of Turkey Creek, its Mayor, Aldermen, and Town Marshal. Plaintiffs' suit is for a declaration of their rights and injunctive relief precipitated by the threat to arrest them for the violation of four ordinances of Turkey Creek which if unrestrained or unenjoined would preclude them from carrying on the business of selling beer containing no more than three and two-tenths per cent alcohol by weight, and which ordinances they maintain are ultra vires and unconstitutional.

The ordinances are referred to as "Ordinance No. 1", "Ordinance No. 2", "Ordinance No. 3", and "Ordinance of February 2, 1960". Stripped of title, enacting clause, and penal clause, the four ordinances read as follows:

"Ordinance No. 1

"Section 1. The sale of any beverage containing any alcohol and the sale of any intoxicating liquor is hereby prohibited."

"Ordinance No. 2

"Section 1. A tippling shop, saloon, dramshop, or a clubroom is hereby defined to be any place where any beverage containing any alcohol or any intoxicating liquor is sold.

"Section 2. Operation of a tippling shop, saloon, dramshop, or clubroom is hereby prohibited."

"Ordinance No. 3

"Section 1. That the finding of fact by this governing authority that all known brands and makes of beer contain more than 3.2% alcohol by weight be duly published and advertised.

"Section 2. The sale of beer is hereby prohibited."

"Ordinance of February 2, 1960

"Section 1. That the operation or conduct of any business involving the sale of any beverage containing alcohol or the sale of any intoxicating liquor within a distance of 300 feet from any church, synagogue, library, or school, excepting a school for business education conducted as a business college, is hereby prohibited.

"Section 2. That the aforesaid distance of 300 feet shall be measured as a person walks using the middle of the sidewalk from the nearest point of the property line of the church, synagogue, library, playground, or school to the nearest point on the property line of the premises on which the business establishment is situated."

It is stipulated that plaintiffs are selling beer in violation of each of these ordinances, and, because of this, they have been threatened with arrest.

The trial court rendered judgment declaring the four ordinances to be ultra vires

and unconstitutional and enjoined the Village of Turkey Creek and its officers from their enforcement. The Village of Turkey Creek and its officers have appealed.

■ The propriety of the relief sought herein by plaintiffs is not contested. See Theodos v. Bossier City, 232 La. 1059, 95 So.2d 825; Schwegmann Bros. v. Louisiana Board of Alcoholic Beverage Control, 216 La. 148, 43 So.2d 248, 14 A.L.R.2d 680; Roksvaag v. Reily, 237 La. 1094, 113 So.2d 285.

The Village of Turkey Creek is a municipal corporation duly incorporated on December 18, 1956. Prior to the incorporation, in 1953, Ward Five of Evangeline Parish, in which the Village of Turkey Creek is situated, was voted "dry" under a local option election properly conducted in accordance with LSA–R.S. 26:581 et seq. Because of the views we have adopted hereinafter, we are not called upon to determine whether the "dry" referendum held in Ward Five in 1953 has effect within the subsequently incorporated municipality of Turkey Creek, which lies within Ward Five.

Apart from the validity vel non of the quoted ordinances, defendants contend there are compelling reasons for according the ordinances in question a special presumptive validity at the very outset of our consideration of the attack directed against them. They assert that the "home rule"

amendment adopted in 1952 (Article 14, Sec. 40(d)) to the Louisiana Constitution establishes a presumption in favor of the validity of municipal ordinances on matters vitally affecting the health, welfare, safety and peace of the community.

Article 14, Sec. 40(d) Louisiana Constitution, LSA, provides:

"*The provisions* of this constitution and *of any general laws passed by the legislature shall be paramount* and no municipality shall exercise any power or authority which is inconsistent or in conflict therewith. Subject to the foregoing restrictions every municipality shall have, in addition to the powers expressly conferred upon it, the additional right and authority to adopt and enforce local police, sanitary and similar regulations, and to do and perform all other acts pertaining to its local affairs, property and government which are necessary or proper in the legitimate exercise of its corporate powers and municipal functions." (Italics ours.)

Defendants submit that the enactment of these ordinances is a valid exercise of the power and authority guaranteed municipalities by the 1952 "home rule" amendment quoted above, and it is furthermore an exercise of the power granted by the Charter of the Village of Turkey Creek, " * * * to make all police regulations

necessary for the preservation of good order and the peace of the municipality; * * * to prohibit and suppress tippling shops, saloons, dramshops, clubrooms; * * to secure the general health of the municipality; to prevent, remove, and abate nuisances." [1]

These grants of authority relied upon by defendants to sustain the validity of these ordinances are subject to certain limitations imposed in the grants. Thus we see that the "home rule" provision of the Constitution provides that "The provisions of this constitution and any general laws passed by the legislature shall be paramount and no municipality shall exercise any power or authority which is inconsistent or in conflict therewith * * *"; additionally, the opponents of the Village of Turkey Creek and its officers have urged for our consideration the provisions of certain "general laws" of the State which they contend restrict and confine the authority of the Village in the exercise of its law-giving power. They argue that these ordinances are ultra vires and unconstitutional and therefore invalid inasmuch as they are inconsistent with and in conflict with two comprehensive state laws on the subject, the Alcoholic Beverage Control Law and the Local Option Law comprising the major portion of Title 26 of the Revised Statutes of 1950, and particularly the ordinances are inconsistent with Sections 272(1), 494, 583, 587 and 588 thereof.

LSA–R.S. 26:494 provides:

"Except as limited by the provisions of this Chapter the various subdivisions of the state may regulate *but not prohibit,* except by referendum vote as provided by Chapter 3, this Title or by legally authorized zoning laws of municipalities, the business of wholesaling, retailing, and dealing in alcoholic beverages. However, no parish or municipality shall, in the exercise of its police power, regulate the business of selling such beverages more than is necessary for the protection of the public health, morals, safety, and peace. Local subdivisions, in adopting these regulatory ordinances, may provide, in addition to the ordinary penalties authorized by law for their violation, provisions which subject the permittee to having his permit suspended or revoked in the manner provided by law for the suspension or revocation of permits." (Italics ours.)

LSA–R.S. 26:588 provides:

"Prohibition of the sale of any or all alcoholic beverages by a local option election held pursuant to this Chapter shall not operate as a prohibition of the manufacturing, producing, using, distributing, storing, or selling

1. LSA–R.S. 33:401, subd. A (6, 7, and 8).

of beverages containing more than one-half of one per cent alcohol by volume but *not more than three and two-tenths per cent alcohol by weight.*" (Italics ours.)

To paraphrase the quoted sections, the Legislature has provided that municipalities may regulate *but not prohibit* except by referendum as provided for in other sections of Title 26, and by zoning, and the sale of beverages containing no more than three and two-tenths per cent alcohol is mandatorily reserved from the effects of prohibition. Ordinance No. 1 is an unequivocal prohibition of the sale of any beverage containing any alcohol. By the stipulation entered into between the parties, it is agreed that the plaintiffs here are selling beer containing no more than three and two-tenths per cent alcohol by weight and, consequently, our view of the case will comprehend that factual situation only. We are not here concerned with an enabling ordinance based upon a "dry" referendum, which, under LSA–R.S. 26:494, would permit the enactment of an ordinance prohibiting the wholesaling, retailing, and dealing in alcoholic beverages, but are concerned with a prohibition of the sale of beverages containing less than three and two-tenths per cent alcohol by weight, which, under LSA–R.S. 26:588, supra, cannot be generally prohibited even by referendum, except under zoning laws or other exceptions to the rules enunciated in LSA–R.S. 26:494 and LSA–R.S. 26:588.

Thus we note that in McGee v. Police Jury of Caddo Parish, 225 La. 471, 73 So. 2d 424, 425, this Court observed:

"The Court of Appeal [66 So.2d 408] pointed out in its opinion that parishes and municipal corporations are creatures of the State and are vested only with such powers as may be conferred upon or delegated to them by the Legislature or the Constitution of this state * * *."

Also citing City of Minden v. David Bros. Drug Co., 195 La. 791, 197 So. 505; State v. Jordan, 207 La. 78, 20 So.2d 543. In the City of Minden case, supra [195 La. 791, 197 So. 508], it was said:

"It is fundamental that a municipality can not adopt ordinances which infringe the spirit of state law, or are repugnant to the general policy of the State. It is also fundamental that a statute granting a municipality the right to exercise a designated portion of the police power must be strictly construed, and any fair and reasonable doubt of the existence of the power must be resolved against the municipality."

■ Even though we would accord to the ordinances of the defendant village the presumption of validity which it maintains is due, that presumption cannot operate to

defeat an express provision contained in the State's general law such as is contained in LSA–R.S. 26:588 providing that "manufacturing, producing, using, distributing, storing, or selling of beverages containing * * * not more than three and two-tenths per cent alcohol by weight" cannot be prohibited. The ordinance is not a regulation—it is a prohibition and is enacted in direct contravention to LSA–R.S. 26:588 which is a paramount law. It transcends the authority to "regulate" contained in LSA–R.S. 26:494. It is, therefore, ultra vires and unconstitutional.

The municipality strives to justify its position by arguing that its Ordinance No. 1 does not prohibit "the business of whole-saling, retailing and dealing in alcoholic beverages", as set forth in LSA–R.S. 26:-494, but all that the Village has prohibited is the "sale" of alcoholic beverages and intoxicating liquors. This, counsel argues, the municipality is not prevented from doing by the statute on which plaintiffs place so much reliance (LSA–R.S. 26:494); that what it has done, we infer from this argument, is to "regulate" and not "prohibit". This position is not valid for the Village did not regulate but it did prohibit. Therefore, what we are concerned with here, as heretofore stated, is not an ordinance enacted which would permit a prohibition under the authority of LSA–R.S. 26:494 in aid of a "dry" referendum, but we are here concerned with whether Ordinance No. 1 prohibiting the sale of any beverage containing any alcohol and the sale of any intoxicating liquor affects plaintiffs' business of selling beer containing less than three and two-tenths per cent alcohol by weight and whether the enactment of the ordinance is counter to LSA–R.S. 26:588. That provision of the Revised Statutes specifically mentions "selling". It appears manifest that municipalities may regulate but have no authority to prohibit the sale of beverages containing no more than three and two-tenths per cent alcohol by weight.

The case of City of Lafayette v. Deep, 160 La. 5, 106 So. 654, is cited in support of the contention that a municipality may prohibit the sale of beverages containing any alcohol whatsoever under its "inherent" police power. An examination of that decision reveals that it is inapplicable here for it was rendered during the era of prohibition when the State itself prohibited the sale of liquor and there was no restriction imposed upon the municipality at that time by any general state law on the subject, which would restrain it from prohibiting the sale of liquor, such as exists in LSA–R.S. 26:588. Nor do we find that the case of City of Baton Rouge v. Rebowe, 226 La. 186, 75 So.2d 239, is persuasive here, for there the ordinance "regulated" and did not "prohibit" generally and the ordinance did not transcend the restriction imposed by the general law of the State which permits regulation.

Municipalities, then, deriving their power and authority from the State, must exercise those powers and that authority subject to whatever restrictions or limitations which the State may impose thereon, either in its Constitution or by its general laws; being creatures of higher authority they cannot legislate in opposition thereto or beyond the authority derived therefrom. The municipality must exercise that restraint which will confine its legislation within permissive limits. The sale of alcoholic beverages and intoxicating liquors is permitted by State law and may only be prohibited generally within a municipality by complying with the local option statute, LSA–R.S. 26:581 et seq., and upon proper vote of the qualified electors of the municipality, or by reference to certain specified exceptions. The municipality may not, even under the authority of local option laws, enact a general prohibition of the sale of alcoholic beverages containing no more than three and two-tenths per cent alcohol by weight. Beer containing no more than three and two-tenths per cent alcohol by weight cannot be prohibited generally. LSA–R.S. 26:588; City of Shreveport v. P. Draiss & Co., 111 La. 511, 35 So. 727; City of Minden v. David Bros. Drug Co.; supra; Schwegmann Bros. v. Louisiana Board of Alcoholic Beverage Control, supra; McGee v. Police Jury of Caddo Parish, supra.

Ordinance No. 2 rests upon the explicit power of the municipality under LSA–R.S. 33:401, subd. A(7) "to prohibit and suppress tippling shops, saloons, dramshops, clubrooms". Paraphrased, this ordinance, in effect, prohibits the operation of any place where any beverage containing any alcohol or any intoxicating liquor is sold. Again, as in the case of Ordinance No. 1, we find this ordinance conflicting squarely with those restrictions imposed upon municipalities and other subdivisions of the State by LSA–R.S. 26:588, supra, which provides that a subdivision of the State may not enact laws which operate as a prohibition of the selling of beverages containing not more than three and two-tenths per cent alcohol by weight. If the operation of "any place" where "any beverage" containing "any alcohol" is prohibited by the ordinance, we are constrained to conclude that this language prohibits or so substantially restricts the business of selling of beverages containing not more than three and two-tenths per cent alcohol by weight that it is in direct conflict with LSA–R.S. 26:588, and goes beyond the realm of a regulation permitted by LSA–R.S. 26:494. It is difficult for this court to conceive of how any appreciable business of selling three and two-tenths per cent beer could be carried on in Turkey Creek and not violate the terms of their Ordinance No. 2. It would, if it were permitted to stand, in effect, suppress

the sale of three and two-tenths per cent beer which cannot be suppressed generally. If the ordinance had merely suppressed "tippling shops, saloons, dramshops, clubrooms, * * *" then the question of its being an exception to LSA–R.S. 26:588 and its application to the cafe of plaintiffs in the case at bar would be presented and, furthermore, the question of whether plaintiffs' three and two-tenths per cent beer is an intoxicating liquor would likewise have been presented for our consideration. The far-reaching language of the ordinance has made it unnecessary for us to pass upon these questions, for we find that it constitutes a general prohibition and goes beyond what is permissive. We construe this ordinance to be an attempt to accomplish by indirection that which cannot be done directly and must conclude that Ordinance No. 2 is ultra vires and unconstitutional.

Ordinance No. 3 contains a finding of fact that all known brands and makes of beer contain more than three and two-tenths per cent alcohol by weight and prohibits the sale of beer. To support this ordinance the defendants rely on the testimony of the Secretary Treasurer, of the Council of Turkey Creek, to the effect: "The Mayor and Board of Aldermen have firmly decided that the sale of any alcoholic beverages or intoxicating liquors in the Village would be injurious, (sic) detrimental to the public morals, to public health, the welfare of the public generally, and abuse in particular, (sic) the Mayor and the Board of Aldermen further found the fact that the beverage or liquor known as beer in all its forms, common forms and brands containing considerable (sic) more than 3.2% alcohol or weights (sic)." Nowhere is it suggested that tests under proper controls were conducted by the defendants or that their finding of fact is a conclusion based on such tests. Learned counsel for the Village of Turkey Creek submit that this ordinance is in aid of the referendum election held in Ward Five of Evangeline Parish in which Turkey Creek is located and is, inasmuch as LSA–R.S. 26:588 and 26:-494 do not protect beer containing more than three and two-tenths per cent alcohol by weight, the prohibition of the sale of beer other than that containing less than three and two-tenths per cent alcohol by weight and, hence, a valid exercise of municipal authority not running counter to any state law. This contention is based upon a premise which assumes that there is not a scintilla of evidence in the record establishing that beer in any form contains less than three and two-tenths per cent alcohol by weight and upon the proposition that it is a familiar principle of constitutional law that, "While as a broad general principle the determination of facts on which constitutional rights depend cannot be taken from the courts, nevertheless the determination of the underlying facts on which the

validity of a statute depends presents primarily a question for the legislature, whose determination is entitled to great weight and will generally be acquiesced in by the courts, if the question is fairly debatable and the legislative determination is not manifestly arbitrary or unreasonable, as shown by the face of the statute or by facts which the court may judicially notice"— citing 16 C.J.S. Constitutional Law § 151 (3).

Although the question of the weight to be given to a legislative finding of fact has not apparently been the subject of a published opinion in this state, the matter has been considered elsewhere. We believe the rule to be well stated by the Florida Supreme Court in Seagram-Distillers Corp. v. Ben Greene, Inc., 54 So.2d 235, 236, as follows:

"The general rule is that findings of fact made by the legislature are presumptively correct. However, it is well recognized that the findings of fact made by the legislature must actually be findings of *fact*. They are not entitled to the presumption of correctness if they are nothing more than recitations amounting only to conclusions and they are always subject to judicial inquiry. Moreover, findings of fact made by the legislature do not carry with them a presumption of correctness if they are obviously contrary to proven and firmly established truths

of which courts may take judicial notice. If the subject upon which the legislature makes findings of fact is one which is fairly debatable, the presumption of correctness attaches and remains extant until and unless such findings are challenged and disproved in an appropriate proceeding."

Under the rule announced here, inasmuch as we would not venture to take judicial notice of the extent of the alcoholic content of beer to determine the presumptive correctness of the findings of fact in the ordinance, we must rely upon the proof in the record to determine whether the presumption is to prevail. Defendants' contention is based upon an erroneous premise. The assumption that there is not a scintilla of evidence in the record contradicting the fact that all known brands or makes of beer contain more than three and two-tenths per cent alcohol by weight is not supported. It was stipulated between the parties that the beer plaintiffs sell, to their knowledge, "contains no more than 3.2% alcohol by weight, defendants reserving whatever right they may have to show that the beer contains more than 3.2%". Defendants have never shown or attempted to show that the beer plaintiffs sold contained more than three and two-tenths per cent alcohol by weight. It is shown by the record that plaintiffs have obtained current state and federal permits permitting them to sell alcoholic beverages containing "no more

than three and two-tenths alcohol by weight"; Roy Randolph testified under cross-examination that he sold "3.2% beer"; this matter was submitted in the District Court on the verified petitions of plaintiffs, wherein it was averred that plaintiffs are "engaged in the business of selling at retail legal beer, i. e., beer containing no more than three and two-tenths per cent alcohol by weight". The record, therefore, does establish, in contradiction to the findings of fact contained in the ordinance, that the beer being sold by plaintiffs does contain less than three and two-tenths per cent alcohol by weight. We feel that the findings have been disproved by these proceedings and the presumption of the correctness of the facts referred to in the ordinance has been adequately rebutted, certainly insofar as plaintiffs here are concerned, for the stipulation establishes that their beer is less than three and two-tenths per cent alcohol by weight, which is, in effect, an admission by defendants of the error of the findings of fact upon which their ordinance is based.[2] Ordinance No. 3 is ultra vires and unconstitutional because, even if in aid of a "dry" referendum[3] as contended by defendants and authorized by LSA–R.S. 26:494, it nevertheless violates LSA–R.S. 26:588 for it prohibits the sale of beer of all known brands and even that of plaintiffs, which the record establishes contains less than three and two-tenths per cent alcohol by weight.

Turning next to the Ordinance of February 2, 1960, we observe that the enactment of such proximity ordinances is within the scope of an exception to LSA–R.S. 26:494 and LSA–R.S. 26:588 and is based upon LSA–R.S. 26:280, subd. C which relates to the granting of permits of all kinds, both state and local. LSA–R.S. 26:280, subd. C provides:

"When prohibited by municipal or parish ordinance, no permit shall be granted for any premises situated within three hundred feet or less, as fixed by the ordinance, of a public playground or of a building used exclusively as a church or synagogue, public library, or school, except a school for business education conducted as a business college or school. In municipalities and in unincorporated areas which are divided into subdivisions with streets, blocks, sidewalks, etc., this distance shall be measured as a person walks using the sidewalk from the nearest point of the property line of the church or synagogue, library, playground, or school, to the nearest point of the premises to be licensed. In undeveloped rural areas, the distance shall be measured in a straight

2. LSA–Civil Code, Article 2291.
3. It is not intended that this language recognize that the "dry" referendum

alluded to is in fact effective in Turkey Creek as this question, as heretofore pointed out, is not passed upon.

line from the nearest point to the nearest point of the respective premises."

LSA–R.S. 26:280, subd. C is enabling legislation conferring powers on local governing bodies and limiting those powers and therein the Legislature has established methods of measurements to ascertain the maximum distance local bodies have authority to regulate.

Epitomized for the purpose of this case, the Ordinance of February 2, 1960, provides that beer of any kind may not be sold within three hundred feet of any church, et cetera, measured from the property line of the church to the property line of the place where the beer is sold.

The facts of the case make it clear that the back line of plaintiffs' lot at the nearest point is two hundred seven feet from the property line of church property in the area. On the other hand, the building in which plaintiffs are licensed by the State[4] to sell beverages containing no more than three and two-tenths per cent alcohol is four hundred seven feet at its nearest point to the property line of the church property. It is argued by plaintiffs that the ordinance goes beyond the powers of the Village because the term "premises to be licensed" in the statute[5] to which the measurement must be made from the property line of the church, school, et cetera, does not mean

outer boundary or property line of the lot upon which the business establishment is situated but instead means the building itself where the liquor is sold.

Restated, we see that the controversy with respect to this particular ordinance arises because it seeks to determine the proximity by measuring the distance "from the nearest point of the property line of the church, synagogue, library, playground, or school to the *nearest point on the property line* of the premises on which the business establishment is situated", (italics ours) in lieu of "from the nearest point of the property line of the church or synagogue, library, playground, or school, to the *nearest point of the premises to be licensed*" (italics ours) as set forth in LSA–R.S. 26:280, subd. C. The meaning of "premises to be licensed" as used in LSA–R.S. 26:280, subd. C determines the issue. For if it is sufficiently broad in meaning it may permit the enactment of an ordinance such as we have under consideration; conversely, if its meaning does not contemplate an interpretation such as has been adopted by the Village, it will be successfully argued by plaintiffs that the ordinance has gone beyond the permissive measurements embodied in the statute (LSA–R.S. 26:280, subd. C) in that it is prohibiting the sale of beverages of low alcoholic content at a distance of 407 feet when 300 feet is estab-

---

4. There is no ordinance of the Village of Turkey Creek which requires obtaining a permit from the Village to sell alcoholic beverages.

5. LSA–R.S. 26:280, subd. C.

lished as the maximum distance · by the State.

■ The use of the property line of the church, school, et cetera, is in our opinion an obvious attempt by the Legislature to permit the removal from the area occupied by such institutions, including their yards and grounds, those activities which are undesirable and which may be associated with establishments selling alcoholic beverages. It is felt, therefore, that insofar as the measurement at the church, school, et cetera, is concerned it must be made from the point nearest the sidewalk of its outer boundary or property line in which the usual and ordinary activities incident to such an institution are carried on. With respect to the other point of measurement, the premises to be licensed, was it the legislative intent to designate the building, structure, or area, or, in a proper case, the portion thereof in which beverages of low alcoholic content were sold, or the property line, or outer boundary? No plausible reason occurs to us and none has been advanced such as exists in the case of a church, et cetera, to make the measurement from the property line or outer boundary of the land on which a building, structure or area selling alcoholic beverages is located merely because it is located thereon. Especially is this true when we consider, as in the case at bar, that there may be some appreciable distance intervening between the property line or outer boundary and the actual building, structure or area whereon the activity which is sought to be removed from the church, et cetera, is carried on. It is not necessarily true that the property line of the lot on which the building, structure, or area selling alcoholic beverages is the location whose proximity is in question; rather, it is the building or structure where the alcoholic beverage is sold which is the location contemplated; whereas, in the case of a church or school the lot itself used by that institution is sought to be protected from proximity to the liquor establishment. The lot on which a building selling alcoholic beverages is located is not necessarily used in connection with that activity, or, in other words, is not necessarily a portion of the "premises to be licensed". If the lot were used as a site for the sale of alcoholic beverages and the license permitted such use a different case might be presented. But here the record involves only the building as the site upon which the selling of alcoholic beverages is involved. For the Village, therefore, to designate some other point of measurement than the one contemplated by the Legislature and thereby extend the distance beyond 300 feet is ultra vires and renders the ordinance ineffective, ultra vires and unconstitutional.

The judgment is affirmed.

SANDERS, Justice (dissenting).

In my opinion, the ordinance of February 2, 1960, prohibiting the sale of intoxicating

liquor "within a distance of 300 feet from any church * * *" is a valid enactment.

A presumption of validity attaches to a municipal ordinance and the burden of proving to the contrary is on him who attacks it. City of New Orleans v. Beck, 139 La. 595, 71 So. 883, L.R.A.1918A, 120; Chapman v. City of Shreveport, 225 La. 859, 74 So.2d 142; Archer v. City of Shreveport, La.App., 85 So.2d 337. The courts must uphold the ordinance unless it is clearly invalid. City of Shreveport v. Bayse, 166 La. 689, 117 So. 775; Nix v. Village of Castor, La.App., 116 So.2d 99.

LSA–R.S. 26:280, subd. C provides in pertinent part as follows:

"When prohibited by municipal or parish ordinance, no permit shall be granted for any premises situated within three hundred feet or less, as fixed by the ordinance, of a public playground or of a building used exclusively as a church or synagogue, public library, or school, except a school for business education conducted as a business college or school. In municipalities and in unincorporated areas which are divided into subdivisions with streets, blocks, sidewalks, etc., this distance shall be measured as a person walks using the sidewalk from the nearest point of the property line of the church or synagogue, library, playground, or school to the nearest point of the *premises to be licensed.* * *" (Italics ours.)

The petitioner in this case is the owner of a cafe operating as a beer outlet for the retail sale or consumption of beer on the premises. See LSA–R.S. 26:241(10), "Beer Outlet."

The validity of the ordinance turns upon a construction of the phrase, "premises to be licensed," as employed in the foregoing statute.

In the absence of a restrictive statutory definition, the word "premises" includes both the lot of ground and the building thereon. Davis v. City of Charlotte, 242 N.C. 670, 89 S.E.2d 406; Fortino v. State Liquor Authority, 273 N.Y. 31, 6 N.E.2d 86; 33 Words and Phrases, Verbo, Premises, p. 354. In context, the addition of the words "to be licensed" does not detract from or limit this meaning. The petitioner is licensed for the "sale or consumption [of beer] on the premises." Assuredly, he has the privilege, whether or not it is exercised, to use both the building and the lot on which it is located for this purpose. Cf. Davis v. City of Charlotte, supra; Fortino v. State Liquor Authority, supra. The test is not whether the lot is "necessarily used in connection with that activity * * *" but whether the statute and the license issued thereunder accord a privilege to so use it.

In my opinion, this ordinance should be upheld. I respectfully dissent.