BARPIAM, Justice.
This defendant was convicted of selling beer in Ward 3 of Claiborne Parish in violation of Ordinance No. 100 of the Claiborne Parish Police Jury passed January 6, 1943, and sentenced to pay a fine of $400.-00 with a suspended jail sentence of four months. During the trial court proceedings two bills of exceptions were reversed, one to the overruling of the motion to quash and the other to the denial of the motion in arrest of judgment. These two bills have been perfected for this appeal, and both present the same legal issue for consideration: Is the parish ordinance which prohibits the manufacture, sale, or consumption of beverages of an alcoholic content greater than one-half of one per cent by volume unconstitutional and invalid, especially when the state law, R.S. 26:58s,[1] provides that beverages containing more than one-half of one per cent alcohol *870 by volume and not more than 3.2 per cent alcohol by weight cannot be prohibited?
Defendant argues that to allow the parish to enforce an ordinance which is contrary to state statute and policy of statewide application, and which regulates more broadly than allowed by state statute (actually prohibits), results in a denial of equal protection and due process of law as guaranteed by the Fifth and Fourteenth Amendments of the United States Constitution and Article I, Section 2, of the Louisiana Constitution.
The conflict between Ordinance No. 100 of Claiborne Parish and the statute is apparent. Generally police regulations of a subdivision of the state cannot exceed the grant of authority from the Legislature and must fall when they conflict with state law. See La.Const. of 1921 Art. XIV, Sec. 40(d). Although this rule would appear to resolve our problem, the complexity of the history and evolvement of the statutory law in this particular field maltes the resolution of the problem somewhat more complex.
R.S. 26:588 is but one of a number of provisions in the chapter of the Revised Statutes of 1950, R.S. 26:581-96, setting out the local option law of this state. Under this chapter wards and municipalities are given the right to determine whether alcoholic or intoxicating liquors may be produced, used, or sold within their geographical areas. Approval of a local option law requires a majority vote of the-residents of the area at an election called especially for that purpose.
The predecessor of R.S. 26:581-96 was. Act No. 372 of 1948. Section 5 of that act contained a provision similar to R.S. 26:588 forbidding prohibition of beverages, containing less than 3.2 per cent alcohol. There was, however, a saving clause ipAct No. 372, Section 17, which provided: “Nothing in this Act shall be construed or-have the effect of vitiating or affecting any ordinance or statute previously adopted or enacted by any political sub-division*, declaring illegal or forbidding the manufacturing, producing, rectifying, blending, using, storing, distributing and selling of beverages containing alcohol of more than one-half of one per cent.” (Emphasis here- and elsewhere supplied.) Since Ordinance-No. 100 of the Claiborne Parish Police-Jury was passed in 1943, Section 5 of Act-372 of 1948 forbidding the prohibition of beverages of less than 3.2 per cent alcohol' had no effect on that ordinance.
When the Revised Statutes of 1950 were-adopted, Act No. 372 of 1948 was specifically repealed by Section 2 of Act No. 2,. and some provisions of that local option, law were enacted as part of the Revised. Statutes (R.S. 26:581-96). This revision did not include the adoption of the saving-clause, Section 17, of Act No. 372. When local option ordinances were attacked as; *872 being contrary to the state law, R.S. 26:581-96, in some respects, this court concluded that the local ordinances remained in full force and effect under R.S. 1:16.[2] State v. Bradford, 220 La. 176, 56 So.2d 145 (1951); State v. Wilson, 221 La. 990, 60 So.2d 897 (1952); State v. Dunning, 224 La. 204, 69 So.2d 16 (1953); see also 112 Grocery v. Cappel, 228 So.2d 157 (La.App. 3rd Cir. 1969), writs refused, 255 La. 246, 230 So.2d 94 (1970).
In State v. Bradford, supra, this court held that the prohibition ordinance of Sabine Parish, carrying a $500.00 fine which exceeded the maximum penalty of $100.00 fine and/or 30 days provided in the Revised Statutes of 1950, had not been repealed with their adoption.[3]
In State v. Wilson, supra, the court cited Bradford for the proposition that the general saving clause, R.S. 1:16, continued in effect any ordinance adopted pursuant to prior local option laws. The court so held, although the particular saving clause, Section 17 of Act No. 372 of 1948, had been repealed by and was omitted from the Revised Statutes of 1950.
In State v. Dunning, supra, the defendant conceded that the prohibition ordinance adopted by the Beauregard Parish Police Jury was valid insofar as it did not conflict with the Revised Statutes granting local option authority. The defendant argued, however, that that ordinance was subject to limitation by the contrary provisions of the Revised Statutes of 1950, so that the maximum penalty which could be assessed for violation of the local ordinance should conform to and not exceed the penalty provision of R.S. 26:595. Again citing and relying upon State v. Bradford, supra, this court reasoned that the general saving clause of the Revised Statutes permitted these ordinances which contradicted and exceeded the state provisions now in force concerning local option referendums. There were two dissents in Dunning, which appear to be based upon a finding that resultant discriminatory practices constituted a denial of equal protection. Plowever, that constitutional issue *874 had not been raised and was not before the ■ court.
On 112 Grocery v. Cappel, supra, a mandamus proceeding was brought to obtain an .alcoholic beverages retail license in a ward of Rapides Parish which was dry under local ordinance passed in 1937 pursuant to local option referendum. The Third Cir•cuit Court of Appeal reasoned that while local areas could not nozv adopt ordinances •prohibiting the sale of beverages of alcoholic content under 3.2 per cent (R.S. 26:588; Randolph v. Village of Turkey Creek, 240 La. 996, 126 So.2d 341, 1961), under the rationale of the cases of the Supreme Court, pre-1948 ordinances containing this prohibition must still be valid. That court recognized that such a holding “permitted the anomalous result of a patchwork of different local prohibitory •ordinances adopted several decades ago, providing different penalties and of different effect than those now authorized by law”. This Third Circuit case is the only case considering the effect of R.S. 26:588 on prohibitions against the sale of beverages containing less than 3.2 per cent alcohol under the old elections and ordinances; and this court, although refusing certiorari, appeared to be somewhat sympathetic to the Court of Appeal’s view as quoted above.[4]
Recognizing that under our jurisprudential statutory interpretation local option Ordinance No. 100 of Claiborne Parish is still in effect, we move to the constitutional issues raised by this defendant, which have never been considered by this court before: Does the ordinance deprive this defendant of his constitutional rights of due process and equal protection ?
The principle that there is no inherent right in a citizen to deal commercially in intoxicating liquors is well recognized. Rather, it is a privilege subject to control by government under its police power for the protection of the moral, social, and economic welfare of the public. But regulation of this activity by governmental bodies is no more without its limitation than is the exercise of other governmental functions under the police power. Constitutional guarantees must be observed, and there can be no exercise of police power which would require the relinquishment of constitutional rights. State ex rel. Galle v. City of New Orleans, 113 La. 371, 36 So. 999 (1904); Schwegmann Bros. v. Louisiana Board, etc., 216 La. 148, 43 So.2d 248 (1949); City of Baton Rouge *876 v. Rebowe, 226 La. 186, 75 So.2d 239 (1954); Reynolds v. Louisiana Board of Alcoholic Bev. Con., 248 La. 639, 181 So.2d 377 (1966), cert. denied, 385 U.S. 8, 87 S. Ct. 58, 17 L.Ed.2d 7; Reynolds v. Louisiana Board of Alcoholic Bev. Con., 249 La. 127, 185 So.2d 794 (1966), cert. denied, Retail Liquor Dealers Ass’n of La., Inc. v. Reynolds, 385 U.S. 946, 87 S.Ct. 318, 17 L.Ed.2d 225.
The method for testing the validity of a purported exercise of the police power has been reiterated by this court in an adoption or paraphrase of the following statement:
“The fixed rule and basic standard by which the validity of all exercise of the police power is tested is that the police power of the state extends only to such .measures as are reasonable, and that all police regulations must be reasonable under all circumstances. * * *
“In every case it must appear that the means adopted are reasonably necessary and appropriate for the accomplishment of a legitimate object within the domain of the police power. A statute to be within this power must also be reasonable in its operation. upon the persons whom it affects, must not be for the annoyance of a particular class, and must not be unduly oppressive. * * *
“ * * * In order to sustain legislative interference by virtue of the police power, either by a statute or a municipal ordinance, it is necessary that the act should have some reasonable relation to such objects, or, for more specific examples, to the public welfare or public health. Moreover, the law must tend toward the accomplishment or promotion of such purposes in a: degree that is perceptible and clear, either-in preventing some offense or manifest evil or in furthering some such object. The-means employed should not go beyond the-necessities of the case.
“ * * * The legislature has no power;, under the guise of police regulations, arbitrarily to invade the personal rights and: liberty of the individual citizen, to interfere with private business or impose unusual and unnecessary restrictions upon-lawful occupations, or to invade property-rights.” 11 Am.Jur. Constitutional Law, §§ 302 and 303, now found at 16 Am.Jur.2d Constitutional Law, §§ 269, 277, 279, 280, 285, and 287.
While the state can delegate its police power, its subdivisions can exercise this authority only within the limits of that delegation of power and can never exceed that delegation. Louisiana has delegated to various of its subdivisions some of its police power for the control of alcoholic beverages. R.S. 26:494 permits the subdivisions of the state to "regulate but not prohibit” the commerce of alcoholic beverages except as provided in R.S. 26:581-96 (local option chapter) and by: 'zoning-Moreover, R.S. 26:494 says that no governmental subdivision shall, “in the exer *878 cise of its police power, regulate the tmsi■ness of selling such beverages more than is necessary for the protection of the public health, morals, safety, and peace”.
In a number of cases this court has dealt with problems which arose from this delegation of power in determining whether the subdivision exceeded its authority. The factual circumstances of these cases cover a broad range of ideas and issues with much contradiction in the reasoning .and in the results reached in these various -opinions.[5] They are better explained and understood when considered in light of the time and the circumstances in which they were decided. Jurisprudence in other states as well as federal jurisprudence re-fleets the same variations and anomalies. This vacillation is a reflection of the changes in mores according to time and place.
Before the adoption of the Eighteenth Amendment to the United States Constitution in 1919, there was no federal regulation or prohibition of the states’ activities in the field of alcohol control. The Louisiana Constitutions of 1812, 1845, 1852, 1861, 1864, and 1868 made no provisions relating to the control of alcoholic liquors. Article 170 of the Constitution of 1879 permitted the “regulation” of the sale and use of alcoholic and spirituous liquors, as did Article 181 of the Constitutions of 1898 and 1913. These provisions were inter *880 preted to permit the General Assembly to control but not to prohibit these liquors. State ex rel. Galle v. City of New Orleans, 113 La. 371, 36 So. 999 (1904). Section 1211 and Section 2778 of the Revised Statutes of 1870 provided that prohibition as well as control of alcoholic liquors could be had under local option referendum. From 1919 to 1933 absolute prohibition was the constitutional law of the entire nation, and our 1921 Constitution omitted any reference to alcohol control because the federal constitution had preempted that field. After the Eighteenth Amendment to the United States Constitution was repealed by adoption of the Twenty-first Amendment in 1933, our state returned by statute to the law that the Legislature could only regulate alcoholic beverages, and 'that prohibition could be had only under local referendum. We do well in considering the fluctuation of our jurisprudence to place it against this historical background.
With this in mind, we must consider the instant case undeb today’s Constitution and laws and in light of what the Legislature and the people through these legal expressions have declared to be such a contravention of the moral, social, and economic welfare of the public in this field as to permit the exercise of the government’s police power.[6] We must determine here whether this local subdivision’s prohibition *882 of beverages of less than 3.2 per cent alcoholic content is a reasonable restriction which can be imposed upon the rights of this defendant, in contravention of a statutory declaration of this state’s policy when exercising its police power in the regulation of alcoholic beverages. In other words, we must decide whether this local prohibition is necessary, appropriate, or permissible for the accomplishment of a legitimate object of government within this ■delegated, police power, and whether it affords due, process and equal protection to the defendant.
We have previously noted that the United States Constitution, Amendment 21, permits state prohibition and regulation of liquor traffic; that such regulation and prohibition are permitted when they are within the ambit of protecting the morals, good order, health, and safety of the people; that although the state may delegate this •constitutional power, the state authority, vested or delegated, cannot be excessive or unjustified, and that when it is delegated, the authority exercised by a subdivision of the state cannot exceed the state’s grant of power.
We said in Schwegmann Bros. v. Louisiana Board, etc., supra, that when the liquor traffic is made lawful, as it always has been in Louisiana except between 1919 and 1933 (i. e., not prohibited by state law), any regulation of it must be pursuant to a legitimate and reasonable exercise of the police power which does not encroach upon constitutional guarantees. Our Legislature, in its enactment of R.S. 26:588 which forbids a prohibition of beverages of less than 32 per cent alcohol even under local option referendums, announced in clear and express terms that if no longer considered such beverages harmful to the morals, good order, health, and safety of the public to a degree that the state’s police power need be or could be exercised to outlaw them. R.S. 26:494 also declares the state’s policy in this regard. It says the subdivisions of this state “may regulate but not prohibit" except by referendum vote as provided in R.S. 26:581-96 (or by zoning), thus by reference adopting the prohibition of R.S. 26:588 against outlawing beverages of less than 3.2 per cent alcohol. If the state has so clearly pronounced this limitation as its public policy, has delineated the *884 maximum regulation necessary for the protection of its people’s welfare in the control of alcoholic beverages, and has found it unnecessary to prohibit beverages of low-alcoholic content, it should be a natural consequence that a local subdivision’s prohibition of these beverages is unreasonable, unnecessary, inappropriate, and impermissible under the limited delegation of the state’s police power. When the Legislature of a state has removed beverages of less than 3.2 per cent alcohol from the classification of intoxicants categorized for possible prohibition for the protection of the public, it is unreasonable to allow a state subdivision to contravene its source of power.
In State ex rel. Galle v. City of New Orleans, supra, we said that when the state legalizes the business of selling alcoholic beverages, the distinctions of place and conditions under which individuals may engage in that business must be founded in reason under its police power, for these distinctions may deprive one citizen of the right to earn his livelihood by a lawful calling while they accord that right to another. If legal reason does not maintain the distinctions, such regulations deny equal protection of the law and due process.
The constitutional right of equal protection under the law is violated when unreasonable classification in law grants to some what others are denied or denies to some what others are granted. To be constitutional the classification must be reasonable and must have a rational, reasonable relationship to, and tend to accomplish, the object of the legislation which has determined that some citizens will be-treated differently from others under the.law. Considering the declaration of state-policy on the limitation of -prohibition of -alcoholic beverages,' 'local regulations in-this field under delegated police power can-meet the constitutional requirement of equal protection only if - they are authorized, reasonable, necessary, and appropriate. •:
In the matter before us the classification-of those who cannot sell and buy — traffic-in — alcoholic beverages under 3.2 per cent-consists of those who — or more likely, those whose ancestors — called a local option election before 1948. The classification of those who must permit the traffic-in beverages of this low-alcohol content is-of those in a local subdivision where the right of local option was not exercised before 1948. What possible benefit flows to-the state, the public, or the individual to have these classifications determine where- and whether beverages of less than 3.2 percent alcohol can be prohibited ?
Certainly these classifications have no reasonable basis for promoting the-health and welfare of the general public, nor can it be seriously proposed that the persons in these two particular classifica *886 tions need different protections for the safeguard of their welfare. Whether to prohibit or not to prohibit must be based upon a determination of what the public welfare demands, what the state’s police power will permit, what will afford equal protection to all in the same class. Here, the only criterion for that determination was the year a particular local population, not now the same constituency, decided to ■call a local option referendum. In the face of the state’s making this commerce lawful and its public policy statement against prohibition in this particular area (under 3.2 alcoholic beverages), these classifications founded upon that criterion alone serve no reasonable purpose for, and have no relationship to, the protection of the general welfare.
State policy for the exercise of its police power cannot be exceeded or contravened by local ordinances, and the state cannot allow local ordinances to deny equal protection under the law by classifying unreasonably for an unreasonable purpose the citizens of this state. Although legislation, local as well as state, is presumed constitutional, when the courts, which are guardians against legislative infringement upon constitutional rights find such an infringement, they must act. Judicial restraint in anticipation of legislative cure cannot be exercised when there is a clear legislative encroachment upon constitutional guarantees, nor can an unconstitutional statute or ordinance be maintained simply because it is longstanding or even ancient.
We do not hold that all local option elections and local ordinances passed pursuant thereto which were effectuated before 1950 and which are not in accord with the Revised Statutes of 1950 are null and of no effect. We hold only that those local option elections and those ordinances passed thereunder cannot be repugnant to or in contravention of R.S. 26:494 and R. S. 26:588.[7] Insofar as the Bradford, Wilson, Dunning, and 112 Grocery decisions conflict with this holding, they are modified.
Insofar as Claiborne Parish Ordinance No. 100 of 1943 prohibits the business of producing, manufacturing,, rectifying, using, distributing, storing, or consuming of beverages of an alcoholic content of less than 3.2 per cent by weight, it is unconstitutional.[8]
For the reasons assigned, the bill of information is quashed, the conviction and sentence are set aside, and the defendant is ordered discharged.
McCALEB, J., concurs in the result.
*888 ■ SANDERS, J., dissents.
SUMMERS, J., dissents for the reasons assigned by SANDERS, J.

. R.S. 26 :588 reads : “Prohibition of the sale of any or all alcoholic beverages by a local option election held pursuant to this Chapter shall not operate as a prohibition of the manufacturing, producing, using, distributing, storing, or selling of beverages containing more than one-half of one per cent alcohol by volume but not more than three and two-tenths per cent alcohol by weight.”

. R.S. 1:16 provides : “Tlie Louisiana Revised Statutes of 1950 shall be construed as continuations of and as substitutes for the laws or parts of laws which are revised and consolidated herein. The adoption of these Revised Statutes shall not affect the continued existence and operation, subject to the provisions hereof, of any department, agency, or office heretofore legally established or held, nor any acts done, any funds established, any rights acquired or accruing, any taxes or other charges incurred or imposed, any penalties incurred or imposed, or any judicial proceedings had or commenced prior to tlie effective date of these Revised Statutes.”

. In State v. Reed, 220 La. 720, 57 So.2d 413 (1952), this court cited State v. Bradford, 220 La. 176, 56 So.2d 145 (1951), as authority for recognizing the validity of a Grant Parish local option ordinance prohibiting the sale of intoxicating liquors of more than 6 per cent alcoholic content.

. Possibly the comment on the refusal of the writ by this court indicates a degree of sympathy with the problems that result from continuing old local laws in the face of contrary new state laws. This court’s comment reads : “The showing made does not warrant the exercise of our jurisdiction for review. Relator failed to attach the application for permit to sell ‘3.2 beer’ to his petition and failed to allege the year or time for which he requests that permit. Relator seeks only a writ of mandamus which will not issue under allegations lacking such specificity.”

. The court has held that an ordinance under local option cannot enact evidentiary rules as to prima facie evidence (City of Shreveport v. Maroun, 134 La. 490, 64 So. 388, 1914; State v. Lassiter, 198 La. 742, 4 So.2d 814, 1941); that the local ordinances cannot bo broader in terms than the provisions of the state statute (City of Shreveport v. Knowles, 136 La. 770, 67 So. 824, 1915, defining a blind tiger; City of Shreveport v. Taylor, 152 La. 299, 93 So. 101, 1922, declaring any type of possession of alcoholic beverages illegal; City of Pineville v. Tarver, 231 La. 446, 91 So.2d 597, 1956, declaring possession of alcoholic beverages illegal; Randolph v. Village of Turkey Creek, 240 La. 996, 126 So.2d 341, 1961, making it unlawful to sell beverages with less than 3.2 per cent alcohol). Xet certain variations from the state law were condoned (City of De Ridder v. Mangano, 186 La. 129, 171 So. 826, 1936, upholding ordinance which forbade employing of females in barrooms or the use of musical instruments; City of Baton Rouge v. Rebowe. 226 La. 186. 75 So.2d 239, 1954. recognizing as valid an ordinance which defined “closed” under the Sunday closing law to mean locked, unlighted, and unoccupied ; City of Lafayette v. Elias, 232 La. 700, 95 So.2d 281, 1957, finding valid an ordinance which increased the age of persons who could lawfully purchase alcoholic beverages from 18 under state law to 21). The court in Simmons v. City of Shreveport, 221 La. 902, 60 So.2d 867 (1952), held a local ordinance to be a denial of equal protection of the law when the city, under an amendment to its ordinance, attempted to “zone” the areas where packaged liquors could be sold at drug stores, so that a drug store which had previously carried on such trade could no longer do so. The court in State v. Trahan, 214 La. 100, 36 So.2d 652 (1948), however, held that the state law which forbade the sale of intoxicants on Sunday but provided an exception that allowed hotels and boarding houses to serve wine for table use on Sunday was not unreasonable discrimination ' against restaurants.

. Under the prohibition against discrimination based on sex in 42 U.S.C.A. §§ 2000e-2 and 2000e-3 and the proposed constitutional amendment to give equal rights to. women (House Joint Resolution 208 has passed in the U.S. Congress and has been ratified by 10 states), it is certainly unlikely that any court could agree with the reasoning of City of De Ridder v. Mangano, 186 La. 129, 171 So. 826 (1936), despite its tongue-in-cheek cleverness. That court said:
“There is nothing arbitrary or unreasonable in either of the ordinances complained of. The presumption is that the city council, in adopting these ordinances, spoke for a majority of the inhabitants of the city. If the ordinance which bans music in barrooms banned music anywhere and everywhere in the city, it would be very unreasonable. Likewise, the ordinance which forbids the employment of women in barrooms would be unreasonable, and would discriminate against the women unjustly, if it forbade the employment of women in places where no harm or mischief might be the natural consequence. But, to forbid the playing of music or the employment of women in barrooms is, obviously, a reasonable regulation of these pleasure resorts. The purpose is to discourage the waste of time and money there, and to avoid the hilarity and disturbance which the combination —-wine, women and song — is so apt to cause. At any rate,' when the members of a city council, with their knowledge of local conditions, and in their mature wisdom — perhaps having neither romance nor music in their souls — have seen fit to leave off only the women and song, that ought to end the matter as far as the courts are concerned. “Barmaids in this country are an innovation which may require some time to become ingratiated with the habitués of the barrooms as the successors of the bartenders. Only a few weeks ago there appeared in the daily press 'throughout the country, a dispatch from New Lórk, by Universal Service, announcing, under big headlines, that the International Barmen’s Association had declared a *882 defensive wav against barmaids — of whom there were only 25 employed in the whole city. The slogan, adopted by the association and proclaimed to the world, was ‘Liquor alone causes enough trouble. Why add women?’ Some very striking — and unselfish — reasons were given by the association for the fear that the employing of barmaids generally in this country might become very mischievous. It is sufficient that the fear of such mischief is a reasonable fear, to make a statute or an ordinance which seeks to prevent the mischief a constitutional statute or ordinance.” See also Goesaert v. Cleary, 335 U.S. 464, 69 S.Ct. 198, 93 L.Ed. 163 (1948), and Anno. 172 A.L.R. 620.

. The question of whether local penal provisions are excessive or repugnant to state law is not before the court.

. See State of Louisiana v. Ellis, 263 La. 904, 269 So.2d 808, and State of Louisiana v. Gantt, 263 La. 907, 269 So.2d 809, both decided this day.