315 So.2d 709 (1975)
J. George NOMEY et al.
v.
STATE of Louisiana, Through Honorable Edwin W. EDWARDS, Governor, et al.
No. 56336.
Supreme Court of Louisiana.
June 9, 1975.
*710 William J. Guste, Jr., Atty. Gen., Carmack M. Blackmon, Asst. Atty. Gen., Leon H. Whitten, Dist. Atty. for defendant-relator.
William H. Baker, Holloway, Baker, Culpepper & Brunson, Jonesboro, for plaintiff-respondent.
BARHAM, Justice.
In Tolar v. State, 315 So.2d 22 (decided April 24, 1975), this Court declared Act 325 of 1974 unconstitutional.[1] The Tolar *711 case, which originated in Jackson Parish, was an appeal by the State of Louisiana from the district court's judgment declaring Act 325 unconstitutional and enjoining its enforcement. Thus deprived of a valid existing legal means whereby the sale of alcoholic beverages in Jackson Parish could be prohibited, the requisite number of qualified electors petitioned the Jackson Parish Police Jury, the parish governing authority, requesting that a local option election be called under the surviving provisions of Act 41 of 1974, with a view to controlling alcoholic beverages. On May 12, 1975, pursuant to that petition, the Jackson Parish Police Jury scheduled a parish-wide election for July 1, 1975, at which time the four propositions authorized by Act 41 and contained in La. R.S. 26:583, as amended and reenacted, will be presented to the electorate of Jackson Parish.[2]
Reacting to the Police Jury's action in calling the election, the respondents, holders of valid Class A and Class B retail liquor permits issued by the State, Jackson Parish and the towns in which they respectively operate, filed a petition in the district court attacking the constitutionality of Act 41, the statutory authority pursuant to which the police jury acted in calling the referendum election, and seeking to enjoin the election which they alleged would result in irreparable harm. The district court issued a temporary restraining order, declaring the provisions of Act 41 "patently unconstitutional." Subsequent to the trial court's issuance of the temporary restraining order, the relators applied to this Court for supervisory writs, which we granted. The case was preferentially assigned due to the limited time available for review before the election date set.
Because the district court did not articulate the grounds upon which its determination of the unconstitutionality of Act 41 rests, the relators apparently attempted to meet each of the various contentions of respondents upon which the district court's determination could have been based. Having determined that the district court was essentially correct when it pronounced Act 41 unconstitutional we need discuss only those principles which render portions of the legislation void.
La. Const. Art. IV, § 4 (1921) prohibited the passage by the Legislature of any "local or special" law on numerous specified subjects. Explicitly prohibited in that constitutional provision was the passage of any "local or special law * * * [f]or the holding and conducting of elections, or fixing or changing the place of voting." Likewise prohibited were special laws "[r]egulating labor, trade, manufacturing or agriculture * * *" and special laws "[c]oncerning any civil or criminal actions." Art. III, § 12 of the Louisiana Constitution of 1974 contains a provision substantially similar to the 1921 provision. Art. III, § 12 reads in part:
"Except as otherwise provided in this constitution, the legislature shall not pass a local or special law:
(1) For the holding and conducting of elections, or fixing or changing the place of voting.

*712 * * * * * *
(6) Regulating labor, trade, manufacturing, or agriculture; fixing the rate of interest.
* * * * * *
(10) Defining any crime."
As may readily be seen by an examination of Section 2 of Act 41, which enacts La.R.S. 26:581.1, Act 41 encompasses a law which is on its face a "special" law since its parish-wide application is confined to twelve enumerated parishes, the parish of Jackson included. Unquestionably, Act 41 affects elections, notwithstanding that the purpose of the elections approved in the act is to regulate intoxicating beverages. Relators argued before this Court that the election provided for in Act 41 is not the type of election contemplated by La. Const. Art. IV, § 4 (1921) and La. Const. Art. III, § 12 (1974) since the Act 41 election is a referendum election which does not bind the governing authority to enact an ordinance in accordance with the will of the electorate. No authority is cited in support of this argument; in point of fact, under an earlier local option law[3] this Court has held that it is the police jury's mandatory duty to adopt an ordinance giving effect to the results of a local option election. Perot v. Police Jury of Natchitoches Parish, 208 La. 1, 22 So.2d 666 (1945). The special character of those provisions of Act 41 which affect only the twelve enumerated parishes is emphasized when the situation under consideration is compared to that which existed in Peck v. City of New Orleans, 199 La. 76, 5 So.2d 508 (1941). In Peck the Court held that the provision of the voting machine law of 1940 which made the use of voting machines mandatory in New Orleans was not a "special" law, notwithstanding that in all other parishes the use of the voting machine for elections was optional. The Court found that the law operated generally throughout the entire state because it authorized the use of voting machines in all elections. In effect, the special aspect of the law considered in Peck was available state-wide. In this case, the special aspect of the law setting forth procedures for local option elections, i.e., the provision for parish-wide elections in specified parishes, cannot be utilized by the remaining fifty-two parishes in the state. These fifty-two parishes must conduct local option elections on a ward or incorporated municipality basis; thus, those persons in these fifty-two parishes who wish to establish prohibition of certain classes of intoxicants must prevail in the democratic arena on a ward by ward or town by town basis and cannot avail themselves of parishwide elections.
We reiterate Perot's holding, wherein this Court found that the necessary and mandatory effect of a local option election was the enactment of an ordinance giving effect to the results of that election. Necessarily, if the proposition to prohibit the sale of beverages containing 3.2% alcohol by weight and less was favorably voted upon in a parish-wide election, the trade, sale and manufacture of that product in that parish would be prohibited by ordinance. Penalties for the violation of the ordinance would attach. See La. R.S. 26:595. Therefore, in holding that Act 41 is a special law we consider the provisions of the 1974 Constitution which prohibit special laws "* * *(6) [r]egulating labor, trade, manufacturing, or agriculture; fixing the rate of interest * * *" and which prohibit special laws "* * * (10) [d]efining any crime" and the similar provisions in the 1921 Constitution. La. Const. Art. III, § 12 (1974); La. Const. Art. IV, § 4 (1921).
It is obvious that the effect of Act 41 of 1974 is to enact special legislation regulating elections and trade and defining crimes. It is therefore unconstitutional.
Since it appears that a legal determination of whether a law if "local or *713 special" may be based in part on equal protection considerations,[4] and since a determination that a law offends the equal protection guarantees of the United States and Louisiana constitutions would render that provision unenforceable, we turn to a consideration of whether Act 41 works a deprivation of the equal protection of the laws which is constitutionally guaranteed.
Throughout the State of Louisiana, in all of the sixty-four parishes, the sale of alcoholic beverages, recognized to be "a lawful calling" (See Reynolds v. Louisiana Board of Alcoholic Beverage Control, 248 La. 639, 181 So.2d 377 (1966) ), is undertaken by various citizens. Persons engaged in this business and those who desire to undertake such a business, while subject to any lawful exercise of regulation pursuant to the governing authority's police power, are entitled to stand equally before the law and to be accorded due process of law. La. Const. Art. I, §§ 2 and 3 (1974); La. Const. Art. I, § 2 (1921); United States Constitution, Fourteenth Amendment. Likewise entitled to the constitutional protections of equal protection and due process are those persons who wish to patronize these businesses. When the guarantees secured to individuals through the federal and state Bills of Rights are restricted in the lawful exercise of the police power, the restrictions imposed must be reasonable and designed to accomplish a purpose properly within the purview of the police power.[5]See, e.g., City of Crowley Firemen v. City of Crowley, 280 So.2d 897 (La.1973). We do not presume to doubt the Legislature's authority to delegate to local governing bodies the right to enforce the will of the electorate as expressed through the outcome of local option elections; nevertheless, the record before us does not contain, nor are we cognizant of, any circumstances which render reasonable the attempted distinctions in the character of local option elections in these twelve specially enumerated parishes. One distinction would effectively deprive persons in those twelve parishes who wish to engage in a business relating to intoxicants and those who wish to patronize such establishments of the right to have the will of their immediate neighbors determine the existence or extent of prohibition on a ward or municipality basis rather than being selectively subjected to a parish-wide determination. Another distinction would arbitrarily permit some governmental subdivisions to vote on four propositions and restrict others to an election on three propositions.
By its very nature, and on its face, Act 41 contains provisions relating to elections, regulating trade and defining crimes which are "special" in nature. Hence, those portions of the Act are constitutionally void. Our declaration of unconstitutionality rests additionally on our determination that those portions of the Act relating specially to the twelve enumerated parishes violate, on their face, the equal protection and due process rights of the inhabitants of those parishes specially affected.
We declare that portion of Act 41 which enacts La. R.S. 26:581.1 unconstitutional in its totality. Having made this pronouncement, we note that it dictates a determination that portions of other sections of Act 41 are unconstitutional. We hold the following sections of Title 26 of the La. Revised Statutes, which Act 41 attempted to amend and reenact, unconstitutional to the extent hereafter indicated:
(1) Section 582 is unconstitutional insofar as it deals with elections on a parish-wide basis.
(2) Section 583 is unconstitutional in respect to the second proposition to be *714 submitted in the petition for referendum because under Section 581.1 which we strike down herein, its submission would be confined to the twelve specially designated parishes.
(3) Section 587 is unconstitutional insofar as it designates proposition 2 as an issue to be placed on the ballot for election for the same reasons that portions of Section 583 are invalidated.
(4) We have previously declared that the amendment to Section 588 was repealed by Act 325 of 1974, which has been held unconstitutional. See Tolar v. State, supra.

(5) Section 592 is unconstitutional insofar as it deals with election procedures on a parish-wide basis.
We declare proposition 2 which appears in Section 583 and Section 587 unconstitutional because of the severability provision contained in Act 41. In order to preserve the severability of the act we must presume that the legislature did not intend for the proposition concerning beverages containing 3.2% alcohol by weight or less to be a proposition for referendum or on the ballot, since Section 581.1 particularly states that only three propositions shall appear on the ballots of those localities which are not specially designated. We are cognizant that in the same legislative session, by Act 648, the legislature makes an attempt to have local option elections on the sale of beverages containing 3.2% alcohol by weight or less in wards and municipalities. That act is not before us and we only construe the act under attack.
For the reasons assigned, we modify the judgment of the trial court to the extent that those portions of Act 41 which are not special in nature are excluded from our declaration of unconstitutionality. Section 2 of Act 41 of 1974, enacting La. R.S. 26:581.1, and the other portions of Act 41 hereinabove enumerated are declared unconstitutional and the parish-wide election called by the Jackson Parish Police Jury pursuant thereto is permanently enjoined.
SANDERS, C. J., dissents and will assign written reasons.
SUMMERS, J., dissents and will assign reasons.
SANDERS, Chief Justice (dissenting).
I subscribe generally to the well-founded dissent of Mr. Justice Summers. Because of the broad holdings of the majority, which may jeopardize other statutes, I feel obliged to make additional observations.
It is a universally accepted principle that a statute is presumed to be constitutional. The burden of establishing unconstitutionality rests upon the party who attacks the statute. State v. Guidry, 247 La. 631, 173 So.2d 192 (1965); 16 Am.Jur.2d Constitutional Law, § 172, p. 390.
In the present case, the trial court held no evidentiary hearing before declaring the statute unconstitutional. Apparently, it issued a temporary restraining order on the face of the petition. With the case in this posture, the majority holds the statute unconstitutional.
The extension of constitutional concepts to strike down liquor ordinances based on local option elections had its inception in 1972. In State v. Beene, 263 La. 865, 269 So.2d 794 (1972), a majority of this Court on first hearing held that certain local option ordinances violated "the constitutional right of equal protection." This holding was corrected on rehearing. On appeal to the United States Supreme Court, that court dismissed the appeal for want of a substantial federal question, finding that the case presented no substantial question under the Equal Protection Clause of the United States Constitution. See 411 U.S. 961, 93 S.Ct. 2147, 36 L.Ed.2d 681 (1973).
*715 Two years later, this Court decided another local option case: State v. Sissons, La., 292 So.2d 523 (1974). Again the unconstitutionality of the ordinance under the Equal Protection Clause was pleaded. The majority, however, rejected the constitutional approach. Instead, the majority held that the local option ordinances had lapsed in 1950 with the enactment of the Louisiana Revised Statutes, because the savings clause in the Revised Statutes was inadequate.
As noted in my Sissons dissent, this holding represented an abrasive treatment of the established jurisprudence, for numerous prior decisions had consistently held that the ordinances were still in effect. See State v. Bradford, 220 La. 176, 56 So.2d 145 (1951); State v. Reed, 220 La. 720, 57 So.2d 413 (1952); State v. Wilson, 221 La. 990, 60 So.2d 897 (1952); State v. Dunning, 224 La. 204, 69 So.2d 16 (1953); 112 Grocery v. Cappel, La.App., 228 So.2d 157 (1969), cert. den. 255 La. 246, 230 So.2d 94 (1970); Melton v. Winn Parish Police Jury, La.App., 228 So.2d 58 (1969), cert. den. 255 La. 153, 229 So.2d 734 (1970); State v. Beene, 263 La. 865, 269 So.2d 794 (1972), appeal dismissed 411 U.S. 961, 93 S.Ct. 2147, 36 L.Ed.2d 681 (1973).
After hundreds of prosecutions, jail sentences, and fines extending over a period of more than twenty years, this Court decided that the basic ordinances had lapsed in 1950.
The present holding of unconstitutionality is based upon two grounds. The majority first holds that Act 41 of 1974, providing for the holding of local option elections, is a local or special law on the following subjects: (1) the holding and conducting of elections; (2) regulating labor, trade, manufacturing, or agriculture; and (3) concerning any civil or criminal action. Secondly, the Court holds that the statute violates the Equal Protection Clause of the state and federal constitutions.
When the statute is tested under the 1921 constitution, it is clear that Act 41 of 1974 is not a "local or special law." The statute applies state-wide. It is true that various parishes are excepted from the parish-wide vote and the low alcoholic content provisions, but these parishes can avail themselves of the remaining local option provisions. If geographical exceptions to state-wide statutes render them invalid, then many statutes on the books reciting "Orleans Parish excepted" are in jeopardy.
General statutes, like the present one, with special provisions or exceptions have been upheld as valid. See Peck v. City of New Orleans, 199 La. 76, 5 So.2d 508 (1941); State v. Smith, 184 La. 263, 166 So. 72 (1936).
In Peck v. New Orleans, supra, a 1940 statute authorized the use of voting machines in sixty-three parishes of the State, but made their use in Orleans Parish mandatory. This Court held that the statute was not local or special.
In Knapp v. Jefferson-Plaquemines Drainage Dist., 224 La. 105, 68 So.2d 774 (1953), the Court held that a statute ratifying the title of the particular drainage district to certain property illegally purchased at tax sale was not a local or special act.
Thus, I conclude that the statute is not a local or special law.
Because of the possible effect of the majority holding on other statutes, I point out that the prohibition against enactment of special or local laws concerning any civil or criminal action "means merely that the Legislature shall not pass a local or special law affecting any particular lawsuit or regulating the trial of lawsuits, civil or criminal, in a particular locality." See State v. McCue, 141 La. 417, 75 So. 100 (1917); State v. Nejin, 140 La. 793, 74 So. 103 (1917). The majority errs in applying the 1974 Constitution to the present statute. The current constitution went into effect *716 on January 1, 1975, and is not retroactive. Art. 14, § 26, La.Const. (1974).
The holding that the statute violates the Equal Protection Clause, in my opinion, lacks support in the jurisprudence and may well jeopardize other statutes.
In State v. Guidry, supra, upholding a state trespass statute applicable only to Jefferson Davis Parish, this Court stated:
"The equal protection clause relates to equality between persons as such, rather than between areas. Clearly, the guaranty of equal protection is not a demand that all state laws operate from boundary to boundary. It compels no state to adopt an iron rule of territorial uniformity for legislation. In the enactment of laws, the Legislature may consider the `needs and desires' of the various sections of the state without infringing equal protection.
* * * * * *
"The rich diversities in the land, people, and culture of Louisiana are matters of common knowledge. They have been celebrated in song and story. Many of these are deeply rooted in history. The rural-urban diversity is but one of several that affect trespass laws. The variegated patterns of topography and land-use militate against state-wide uniformity in trespass legislation.
"The defendant has assailed the statute by motion in arrest of judgment, directed only at defects patent upon the face of the record. LSA-R.S. 15:517. He, of course, has made no showing that the relevant conditions and needs in Jefferson Davis Parish are the same as those of the other parishes. See McGowan v. State of Maryland, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393. The Court cannot assume the absence of differences when there is no proof. Ft. Smith L. & T. Co. v. Board of Imp. of Paving Dist.[274 U.S. 387, 47 S.Ct. 595, 71 L.Ed. 1112, citation supplied]."
See also Bennett, Public Law Criminal Law, 26 La.L.Rev. 567-577.
Here, as in State v. Guidry, supra, the trial court received no evidence and acted upon the face of the petition. In my opinion, the majority has erred by failing to honor the presumption of constitutionality and holding, contrary to prior jurisprudence, that the statute on its face is unconstitutional.
For the reasons assigned, I respectfully dissent.
SUMMERS, Justice (dissenting).
According to a petition filed by plaintiffs in the district court, the Jackson Parish Police Jury on May 12, 1975 called an election pursuant to a petition of 25 percent of the qualified electors of the parish under the provisions of Act 41 of the Regular Session of the Legislature of 1974.[1] The election was scheduled to be held in Jackson Parish on a parish-wide basis on July 1, 1975, at which time these four propositions authorized by Act 41 were to be presented to the electors of Jackson Parish:
(1) Shall the sale of beverages of low alcoholic content containing more than three and two-tenths percent alcohol by weight, and not more than six percent alcohol by volume, be permitted?
(2) Shall the sale of beverages containing more than one-half of one percent alcohol by volume, but not more than three and two-tenths percent alcohol by weight, be permitted?
(3) Shall the sale of beverages of high alcoholic content containing more than six percent alcohol by volume for consumption on the premises be permitted?
(4) Shall the sale of beverages of high alcoholic content containing more than *717 six percent alcohol by volume be permitted by package only and not for consumption on the premises?
On the next day, May 13, 1975, after the police jury called the election, plaintiffs presented a petition to the district judge which attacked the constitutionality of Act 41, the authority relied upon by the police jury to call the election. Aside from the numerous grounds alleging the unconstitutionality of Act 41, plaintiffs alleged that they were electors and taxpayers engaged in the business of selling alcoholic beverages of more that 3.2 percent alcoholic content by weight in Jackson Parish and the holding of the election would cause them irreparable harm and damage. They prayed, therefore, that holding of the election be restrained and enjoined.
Based upon this petition, the district judge issued a temporary restraining order declaring that "the provisions of said Act are patently unconstitutional." No other reasons were assigned for this action. Based upon this action of the trial judge, defendants applied to this Court for supervisory writs. Considering the limited time for review prior to the election, certiorari was granted and the case was given preferential assignment.
Defendants' complaint that the temporary restraining order should not have been issued without notice and that Act 41 should not have been declared unconstitutional in a summary proceeding are relegated to a consideration of the constitutionality of the Act on the merits.
Although the majority has chosen to declare Act 41 unconstitutional on one of several contentions urged, in my opinion the error of the majority opinion is best brought to light by disclosing all of the issues presented.
It is elementary that every legislative enactment is presumed to be constitutional and valid unless clearly shown to encroach upon fundamental rights, or unless it is found to be repugnant to express provisions of the constitution. Olan Mills, Inc. of Tennessee v. City of Bogalusa, 225 La. 648, 73 So.2d 791 (1954); State v. Rones, 223 La. 839, 67 So.2d 99 (1953). Any doubt as to the constitutionality of an act must be resolved in favor of its validity. Johnson v. Collector of Revenue, 246 La. 540, 165 So.2d 466 (1964). The burden of establishing the alleged unconstitutionality of a statute rests upon the party attacking it. Hamilton v. McKeithen, 254 La. 683, 226 So.2d 494 (1969). It is a cardinal cannon of constitutional interpretation that if an act of the legislature is susceptible to two interpretations, one favoring the other against constitutionality, the interpretation favoring constitutionality should be adopted by the courts. Pearce ex rel Structural Pest Control Commission v. Sharbino, 254 La. 143, 223 So.2d 126 (1969). It is in light of these principles that we consider the attack on the constitutionality of the Act.

I. Ex Post Facto
One contention is that Act 41 is retroactive in its effect and for that reason offends Article IV, Section 15, of the Constitution of 1921 providing that "No ex-post facto law, nor any law imparing the obligation of contracts shall be passed;. . . ." See also La.Const. Art. I, § 23 (1974).
The constitutional principle which prohibits ex-post facto laws and those impairing the obligation of contracts is well-recognized in Louisiana courts. State v. Ferrie, 243 La. 416, 144 So.2d 380 (1962); State v. Masino, 216 La. 352, 43 So.2d 685 (1949). The principle is embodied in Title 1, Section 2, of the Revised Statutes: "No section of Louisiana Revised Statutes may be construed to be retroactive unless it is expressly so provided." Thus all laws in Louisiana are prospective in their effect *718 unless otherwise declared in the Act. There is no provision of Act 41 declaring that it shall have retroactive effect. To the contrary, the entire theme of the Act amending existing sections of the Revised Statutes pertains to procedures to determine, in the future by local option elections to be held thereafter, whether manufacturing, producing, using, distributing, storing or selling of beverages is to be permitted in political subdivisions.
Only one portion of the Act could conceivably express an intention to have retroactive effect; that being Section 588 announcing that "No provision of this chapter shall be construed as or have the effect of vitiating or affecting any ordinances adopted prior to 1948 . . ." prohibiting the sale of alcoholic beverages of certain content. Insofar as that language can be construed to validate ordinances declared invalid by this Court in State v. Sissons, 292 So.2d 523 (La. 1974), it can have no effect. Otherwise, however, the Act offends no part of the doctrine of Article IV, Section 15, of the Constitution prohibiting ex post factor laws. And, since Section 3 of the Act is a severance clause, particularly pertinent here, it is quoted for emphasis:
"If any provision or item of this Act or the application thereof is held invalid, such invalidity shall not affect other provisions, items or applications of this Act which can be given effect without the invalid provisions, items or applications, and to this end the provisions of this Act are hereby declared severable."
Plaintiffs' claim that a referendum prohibiting the sale of alcoholic beverages will divest them of vested rights by putting them out of business, with the loss and damage resulting therefrom, is without merit. Regulation of intoxicating liquors and alcoholic beverages is a valid exercise of the police power involving as it does the health, safety and morals of the population. La.Const. Art. XIX, ¶ 18 (1921). The fact that police power is not exercised, presents no obstacle to its exercise in the future. Just as when the authority to exercise the police power is delegated to a subdivision of the State, it may be withdrawn or modified at any time by the legislature.
Act 41 is, therefore, an exercise of the legislature's undoubted right to authorize the public to determine whether they will impose one of four, or all, or none, of the authorized restraints upon manufacturing, producing, using, distributing, storing or selling of beverages of alcoholic content. Such a legislative authorization offends no constitutional guaranty. The Act is, except for Section 588, wholly prospective in its operation.

II. Total prohibition
It is asserted that the purpose of Act 41 is to amend and re-enact Section 588 of Title 26 of the Revised Statutes of 1950 relative to the prohibition of beverages containing under 3.2 percent alcohol and to provide for the revival of ordinances adopted and in effect on a parish-wide, ward or other basis prior to 1948, which prohibited the sale of such beverages.
As contained in the Revised Statutes when enacted in 1950, Section 588 of Title 26 read:
"Prohibition of the sale of any or all alcoholic beverages by a local option election held pursuant to this chapter shall not operate as a prohibition of the manufacturing, producing, using, distributing, storing or selling of beverages containing more than one-half of one percent alcohol by volume but not more than three and two-tenths percent alcohol by weight." *719 By Act 705 of 1972 the foregoing provision was reenacted with this additional language:
"Provided, however, this section shall not be construed as or have the effect of vitiating or affecting any ordinances adopted prior to 1948 by any political subdivision which prohibited the sale of beverages containing alcohol of more than one-half of one percent by volume; to preserve those ordinances of local subdivisions that prohibited the sale of beverages containing under 3.2 percent alcohol which were adopted prior to and were in effect in 1948, and any court decisions to the contrary are legislatively overruled."
In this posture, Section 588 of Title 26 was considered by this Court in State v. Sissons, 292 So.2d 523 (La. 1974). There the Court noted that the language added to Section 588 by Act 705 of 1972 purports to direct the manner in which the section was to be construed and "to preserve those ordinances" prohibiting beverages of less than 3.2 percent alcoholic content. This attempt to interpret the law by the legislature was rejected as a usurpation by that body of a judicial function. It was further noted that Section 588 as amended did not refer to parish-wide prohibition ordinances.
Thereafter Act 41 of 1974 was enacted, and Section 588 was again amended as will appear in the appendix to this opinion. During the same session in 1974, Act 325 was enacted again superseding that portion of Act 41. This later Act 325 was declared unconstitutional insofar as the Act sought to "revive" ordinances in effect prior to 1948. Tolar v. State decided April 24, 1975. The Tolar Court further declared: "Local option ordinances can be brought into effect in these parishes in only one wayeach parish that seeks to have local option ordinances must conform with the specific requirements for calling local option elections and enacting ordinances pursuant to the election."
In the context of the instant case, the election is being called precisely according to the requirements of Act 41, and in keeping with the mandate of the Tolar Case, to establish the base for enactment of the necessary ordinance. This case does not concern in any respect the provisions of Section 588, and that section is not, as it cannot be, relied upon in any way. Any contention which seeks to inject Section 588 into the problems here are without effect. Section 588 has been amended by Act 325 of 1974 and that amendment has in turn been held to be invalid insofar as Section 588 is concerned.
Thus there is no statutory prohibition regulating or prohibiting alcoholic beverages containing more than one-half of one percent alcohol by volume, but not more than three and two-tenths percent alcohol by weight.
When Act 41 authorizes an election to be conducted "to determine whether or not the business of manufacturing, producing, rectifying, distilling, blending, using, storing, distributing and selling alcoholic beverages" will be prohibited or regulated, the election determining that question becomes the will of the legislature. It is only necessary thereafter to implement that proposition with the necessary ordinance prescribing the appropriate penalties as authorized by Section 595 of Title 26 of the Revised Statutes:
"When the majority of qualified electors voting in an election held under the provisions of this Chapter determine that any or all of the businesses described shall not be licensed, the governing authority calling the election may provide for the prohibition by ordinance, and may provide penalties for the violation of the ordinances. The penalties shall not, however, exceed a fine of one hundred dollars or imprisonment for not more than thirty days, or both."
As the Constitution of the United States makes clear, when the Eighteenth Amendment *720 was repealed by the Twenty-first Amendment, the transportation, possession and use of intoxicating liquors within a state were to be regulated thereafter by state law. Louisiana's authority to enact Act 41 is therefore plenary.

III.
Act 41 authorizes prohibition of alcoholic beverages on a parish-wide basis and the prohibition of beverages containing more than one-half of one percent alcohol by volume, but not more than three and two tenths percent alcohol by weight. It further declares that the authorization shall apply and is available for use only in the parishes of, or the wards or municipalities of, Beauregard, Washington, Rapides, Natchitoches, Red River, Grant, LaSalle, East Carroll, West Carroll, Bienville, Jackson and Winn.
The Act further provides that the exercise of this local option authority elsewhere in the state shall be confined to propositions 1, 3 and 4 to which reference has been made. Therefore, only proposition 2 is special to the parishes named above, the other three propositions being available throughout the state.
Plaintiffs contend that these provisions of the Act, applicable in certain aspects only to certain enumerated parishes, offend the privileges and immunities clause and the equal protection clause of the federal constitution. U.S.Const. Art. IV, § 2 and 14th Amendment.
In Mahoney v. Joseph Triner Corp., 304 U.S. 401, 58 S.Ct. 952, 82 L.Ed. 1424 (1938), it was held that the Twenty-first Amendment rendered the equal protection clause inapplicable to imported intoxicating liquors. Further, State Board of Equalization v. Young's Market Co., 299 U.S. 59, 57 S.Ct. 77, 81 L.Ed. 38 (1936), held that the Twenty-first Amendment sanctions the right of a state to legislate concerning intoxicating liquors unfettered by the Commerce Clause. As the state is not so limited by the federal constitution, it is likewise not limited by any similar provision of the State Constitution. Plaintiff's argument in this respect is without merit.

IV.
Acts 37 and 41 of the Regular Session of 1974 were enrolled June 20, 1974, signed by the appropriate officials on June 20, 1974, sent to the Governor for approval on the same day, approved by the Governor June 26, 1974, and received by the Secretary of State on June 27, 1974.
Act 37 is enrolled on pages 1310 and 1311 of Volume I of the House Journal, while Act 41 is enrolled on page 1311. Aside from the fact that Act 41 follows Act 37 and is therefore a later act, the two enactments do not conflict. Act 37 is an additional procedure for certain enumerated subdivisions, while Act 41 is comprehensive general legislation governing local option elections state-wide, making the parishes already enumerated exceptions with regard to the sale of beverages containing more than one-half of one percent alcohol by volume, but not more than three and two-tenths percent alcohol by weight. The acts are not in conflict.

V.
It is asserted by plaintiffs that Act 41 is a local and special law which is enacted contrary to the constitutional prohibition that "The Legislature shall not pass any local or special law on the following specified subjects: For the holding and conducting of elections, or fixing or changing the place of voting. . . ." La. Const. Art. IV, #4. Except to assert the Act's unconstitutionality on this basis, no further argument is advanced nor is any authority cited. Notwithstanding that this contention was not considered by plaintiffs to deserve *721 further treatment, the majority has seized upon this tenuous issue to declare Act 41 unconstitutional. Generally, I understand, it has been considered that this constitutional prohibition applies to election of public officials and not to the referendums authorized by Act 41 of 1974. However, I shall proceed to set forth my understanding of the law applicable to the issue.
Section 2 subd. B of Act 41 permits the exercise of the local option provisions in the wards and incorporated municipalities located in all parishes, except those enumerated, to submit three propositions to the electors and no other. However, Act 648 of the same session (La.R.S. 26:586.1) was enacted adding an additional procedure permitting proposition 2 to be submitted by any ward or incorporated municipality in the State, thus eliminating the exception created by Section 2, subd. B of Act 41.
Thus, the narrow question upon which plaintiffs must rely to support their claim that Act 41 is local and special is the fact that parish-wide local option elections on proposition 2 are limited to twelve parishes all situated together geographically in the north central part of the State. As noted, this same proposition can be presented to the electorate in wards and municipal elections in other areas of the State. Therefore, although the parishes not included in the enunciation of the statute may not conduct a parish-wide election, they may attain the identical result by elections conducted by ward or municipality.
These enumerated parishes exercised the right by ordinances to regulate and prohibit the use of alcoholic beverages of certain content under the authority of Act 17 of 1935 and Act 372 of 1948 which authorized the exercise of local option by wards and municipalities. By this Court's decision in State v. Sissons, 292 So.2d 523 (La.1974), it was held that the authority for the enactment of these ordinances was repealed by the enactment of the Revised Statutes in 1950. See my dissent in the Sissons Case and State v. Beene, 263 La. 865, 269 So.2d 794 (1972), in which the majority's equal protection rationale in the case at bar was rejected. The facts nevertheless demonstrate the strong need of these parishes for regulation of intoxicating beverages, located as they are in areas where custom is compatible with this legislation.
Since the decision in State v. Sissons, the legislature has sought by repeated enactments to preserve the right of those parishes to regulate the use of alcoholic beverages within their boundaries. See Act 705 of 1972, Act 235 of 1974 and the legislation mentioned in this opinion.
As a basic proposition, the law on the subject was succinctly set forth in City of Bogalusa v. Gullotta, 181 La. 159, 159 So. 309 (1935):

"The state may, under its police powers, enact laws regulating the liquor traffic, or it may prohibit the traffic altogether, either state-wide or in specified localities, and such statutes are constitutional. State v. Kenny, 141 La. 594, 75 So. 422; State v. McCue, 141 La. 417, 75 So. 100. Or it may prohibit the sale of liquor to certain persons, at certain places, or on certain days. Section 6, Act No. 176 of 1908, as amended by Act No. 21 of 1910, prohibits the sale of intoxicants to women, girls, or minors, and prohibits the sale in the same building to persons of the Caucasian and Colored races. Act No. 102 of 1890 prohibits the sale of intoxicants to inebriates or habitual drunkards. Act No. 43 of 1894 prohibits the employment of females in liquor saloons. Act No. 79 of 1908 prohibits the drinking of intoxicating liquors on railroad trains. Act No. 289 of 1910 prohibits the sale of such liquors on *722 election days, and Act No. 18 of 1886 prohibits the sale of intoxicating liquors on Sundays. These are all special laws enacted under the police powers of the state, and we discover nothing in Act No. 15 of 1934 to indicate that the law makers intended by its adoption to wipe out such laws or any local prohibitory statute." (emphasis added.)
This authority makes clear that the regulation of intoxicating beverages is the exercise of the State's police power. State v. Gardner, 198 La. 861, 5 So.2d 132 (1942). The constitution emphatically declares that "The exercise of the police power of the State shall never be abridged." La.Const. Art. XIX, § 18. This means, quite obviously, that any other provision of the constitution which seeks to limit the police power must give way to the overriding considerations which require that the State's police power be unimpaired. Walmsley v. O'Hara, 182 La. 213, 161 So. 587 (1935). Even the essential right of due process must yield to a proper exercise of the police power. State ex rel Porterie v. Walmsley, 183 La. 139, 162 So. 826 (1935).
Whether a law is local or special is determined by equal protection arguments and they are not for that reason alone unconstitutional. The same is true of local or special legislation which is limited either in the objects to which it is directed or by the territory within which it is to operate. The special and local law prohibition is aimed at maintaining equal protection and equality of persons as such, rather than between areas. Thus legislation which is limited to the area within which it is to operate is not prohibited. All that is required is that the laws be general in the locality in which they operate. Under this reasoning it is held that a classification is not illegal because certain cities are included while others are omitted from the operation of a statute. State ex rel Hickey v. Levitan, 190 Wis. 646, 210 N.W. 111 (1926); and the legislature may exercise its police power to fit the needs of the various sections of the state as it deems proper. Croft v. Lambert, 228 Or. 76, 357 P.2d 513.
In State v. Guidry, 247 La. 631, 173 So.2d 192 (1965), we upheld a trespass statute defining criminal trespass in only one parish against the claim that it denied equal protection of the law, saying:
"Clearly, the guaranty of equal protection is not a demand that all state laws operate from boundary to boundary. It compels no state to adopt an iron rule of territorial uniformity for legislation. In the enactment of laws, the Legislature may consider the `needs and desires' of the various sections of the state without infringing equal protection."
In like manner the voting machine law of 1940 has been upheld, making the use of voting machines mandatory in New Orleans, and granting to other parishes of the state the option of determining whether they will adopt voting machines or not. This Court held that this was not a "special law" or "local law". Peck v. City of New Orleans, 199 La. 76, 5 So.2d 508 (1942). There the attack upon the voting law, conceding that special laws could be enacted based upon geographical classification, contended that the classification must always rest upon some difference which bears a reasonable and just relation to the Act, and it can never be arbitrary. In rejecting the contention the Court held:
"We cannot coincide with this line of reasoning for it is not the function of this court to charge the Legislature with making arbitrary and discriminatory classifications in the absence of clear manifestation that such was the case. On the contrary, in adopting the instant legislation there may have been many salutary reasons for requiring the use of voting machines . . . ." *723 The same is true in this case. Except for conclusory allegations, no facts have been set forth or affidavits attached which would establish that this is a local or special law concerning elections denying equal protection to these plaintiffs or other affected. True Act 41 does affect elections, but its primary object is the regulation of intoxicating liquors which in one narrow particular is applicable only to twelve parishes. It is not a matter of constitutional dimensions. Even if an act affects elections it must also be local or special in the sense that it unreasonably offends the doctrine of equal protection before it runs counter to the constitution. See Knapp v. Jefferson-Plaquemine Drainage District, 224 La. 105, 68 So.2d 774 (1953); State v. Capdeville, 104 La. 561, 29 So. 215 (1901). The conditions prevailing in those parishes, and their customs, which we recognize, La.R.S. 15:422, are a rational basis for the legislative action, and the attack is not well-founded.
In my view the Act is not constitutionally infirm.
 APPENDIX
 ACT No. 41
House Bill No. 729. By: Messrs. Cain, Mills and Stephenson
 AN ACT
To amend and reenact Sections 582, 583, 585, 587, 588 and
 592 of Title 26 of the Louisiana Revised Statutes of 1950
 and to amend said Title 26 by adding thereto a new section
 to be designated as R.S. 26:581.1, relative to the procedures
 to determine by local option election whether the
 manufacturing, producing, using, distributing, storing or
 selling of beverages is to be permitted in political subdivisions,
 to authorize the use of said procedures on a
 parish-wide basis, to provide for the use of said procedures
 to determine whether beverages containing more than one-half
 of one percent alcohol by volume but not more than
 three and two-tenths percent alcohol by weight shall
 be permitted in parishes, municipalities and wards, to provide
 for the effect of the vote in such elections on said
 political subdivisions and portions thereof, to provide with
 respect to local ordinances adopted prior to 1948 and to
 provide generally and specifically with respect to all matters
 related to the foregoing.
 Be it enacted by the Legislature of Louisiana:
 Section 1. Sections 582, 583, 585, 587, 588 and 592 of Title
26 of the Louisiana Revised Statutes of 1950 are hereby amended
and reenacted to read as follows:
 §582. Petition for election; parish-wide elections; separate
elections; frequency limited
 Upon petition of not less than twenty-five percent of the
qualified electors residing in any parish, ward, or any incorporated
*724
municipality the governing authority shall order a
referendum election to be held to determine whether or not
the business of manufacturing, producing, rectifying, distilling,
blending, using, storing, distributing and selling alcoholic
beverages, shall be conducted and licensed therein.
 In the case of such an election held on other than a parish-wide
basis the election shall be separately called and held,
and the result separately binding for each incorporated municipality,
and for the unincorporated balance of the ward. In
the case of an election called on a parish-wide basis the
result shall be binding on the entire parish.
 No such election shall be held for the same subdivision oftener
than once in every two years.
 §583. Form of petition for election
 Any qualified elector desiring a referendum election, shall
sign a petition addressed to the governing authority of the
subdivision in which he resides, and in substantially the
following form:
 PETITION
TO:
 The undersigned qualified electors respectfully request that
you call an election to submit, in the manner provided by
law, to the qualified electors of the parish of__________________,
or of Ward__________ of_____________________ Parish, or of the city,
town or village of_________________, the following four propositions:
 (1) Shall the sale of beverages of low alcoholic content
containing more than three and two-tenths percent alcohol
by weight and not more than six percent alcohol by volume
be permitted?
 (2) Shall the sale of beverages containing more than one-half
of one percent alcohol by volume but not more than
three and two-tenths percent alcohol by weight be permitted?
 (3) Shall the sale of beverages of high alcoholic content
containing more than six percent alcohol by volume for consumption
on the premises be permitted?
 (4) Shall the sale of beverages of high alcoholic content
containing more than six percent alcohol by volume be permitted
by package only and not for consumption on the premises?
 Signature Address Date
 Where signatures are made on more than one sheet, each
sheet of the petition shall reproduce above the signatures the
same matter as is on the first sheet. Each petitioner shall
sign his name in his own handwriting and shall write his
address and the date on which he signed, otherwise his signature
shall be null and void. If an elector cannot sign his
*725
name because of age or physical condition, he may have his
name and address and the date written by another and shall
affix his ordinary "X" mark in the presence of two competent
electors, who shall sign their names as witnesses to the mark.
 §585. Verification of petition by registrar; filing with governing
authority
 The registrar of voters shall check the petition and attach
thereto his sworn verification showing:
 (1) The date the petition was filed;
 (2) Copy of official journal showing publication of the
petition;
 (3) The date of the first signature of the petition;
 (4) The number of qualified electors of the parish, ward
or of the municipality, as the case may be, on the registration
rolls as of the date of the filing of the petition, which
date shall be used by him in ascertaining if the petition contains
the required number of signatures;
 (5) That he has checked each signature for its genuineness
by comparing the signature on the petition with the signature
of the same person on the registration rolls;
 (6) The total number of genuine signatures of qualified
electors on the petition; and
 (7) The number of signatures not genuine, or not signed
and written in the manner required in R.S. 26:583.
 He shall file the petition, with his sworn verification, with
the governing authority charged with the duty of calling the
election.
 §587. Ballot; majority determination of issues; separation
of results
 When such election has been ordered the following propositions,
and no others shall be plainly printed upon a special
ballot to be used for the election, otherwise the election shall
be null and void:
 1. Shall the sale of beverages of low alcoholic YES []
content containing more than three and two-tenths
percent alcohol by weight, and not more than six
percent alcohol by volume, be permitted in___________ NO []
2. Shall the sale of beverages containing more YES []
than one-half of one percent alcohol by volume
but not more than three and two-tenths percent
alcohol by weight be permitted in___________________ NO []
3. Shall the sale of beverages of high alcoholic YES []
content, containing more than six percent alcohol
by volume for consumption on the premises be
permitted in _________________________________ NO []
4. Shall the sale of beverages of high alcoholic YES []
content, containing more than six percent alcohol
by volume by the package only and not for consumption
on the premises be permitted in______________ NO []
*726
 If the voter desires to vote "YES" on any or all of these
propositions he shall make an "X" mark in the square opposite
the word "YES". To vote "NO" he shall make an "X"
mark in the square opposite the word "NO". The vote of the
voter on each proposition shall be valid and shall be counted,
and failure to vote on all the four propositions shall not
invalidate the ballot as to those propositions on which a vote
was cast.
 In an election other than on a parish-wide basis a majority
vote cast on each proposition shall separately determine that
issue for the ward, or for the incorporated municipality and
in such an election when a ward contains an incorporated
muinicipality, the issue shall be separately determined for
the municipality and for the unincorporated balance of the
ward. In all such elections held on a parish-wide basis a
majority vote cast on each proposition shall determine that
issue for the entire parish.
 §588. Prior ordinances
 No provision of this chapter shall be construed as or have
the effect of vitiating or affecting any ordinances adopted
prior to 1948 by any political subdivision which prohibited
the sale of beverages containing alcohol of more than one-half
of one percent by volume; to preserve those ordinances
of local subdivisions that prohibited the sale of beverages
containing under 3.2 percent alcohol which were adopted prior
to and were in effect in 1948; and any court decisions to
the contrary are legislatively overruled.
 §592. Parish board of supervisors to supervise elections;
fees of board
 The elections provided for in this chapter shall be supervised
by the board of supervisors of elections for the parish
calling the election or in which the ward, or incorporated
municipality calling the election is located. Each member of
the board, except the registrar of voters shall receive twenty-five
dollars from the governing authority calling the election
for each election duly held under the law.
 Section 2. Section 581.1 of Title 26 of the Louisiana Revised
Statutes of 1950 is hereby enacted to read as follows:
 §581.1. Prohibition of 3.2 percent alcohol; parish-wide option;
exceptions
 A. The provisions of this chapter authorizing the prohibition
of alcoholic beverages on a parish wide basis and the
prohibition of beverages containing more than one-half of
one percent alcohol by volume but not more than three and
two-tenths percent alcohol by weight shall not apply and
shall not be available for use in the parishes of or the
wards or municipalities in any of the parishes of the state
*727
except Beauregard, Washington, Rapides, Natchitoches, Red
River, Grant, LaSalle, East Carroll, West Carroll, Bienville,
Jackson and Winn Parishes.
 B. In the exercise of local option pursuant to the provisions
of this chapter in the wards and incorporated municipalities
located in all parishes except Beauregard, Washington,
Rapides, Natchitoches, Red River, Grant, LaSalle, East
Carroll, West Carroll, Bienville, Jackson and Winn as provided
in Subsection A of this Section, three propositions
and no others shall appear on the petition provided for in
R.S. 26:583 and on the ballot provided for in R.S. 26:587,
which propositions shall be limited to propositions 1, 3, and
4 contained in R.S. 26:583 and R.S. 26:587, respectively.
 Section 3. If any provision or item of this Act or the application
thereof is held invalid, such invalidity shall not affect
other provisions, items or applications of this Act which
can be given effect without the invalid provisions, items or
applicat ons, and to this end the provisions of this Act are
hereby declared severable.
 Section 4. All laws or parts of laws in conflict herewith
are hereby repealed.
Approved by the Governor: June 26, 1974.
A true copy:
 WADE O. MARTIN, JR.
 Secretary of State.
NOTES
[1] Act 325 of 1974 provides:

"Prohibition of the sale of any or all alcoholic beverages by a local option election held pursuant to this chapter shall not operate as a prohibition of the manufacturing, producing, using, distributing, storing or selling of beverages containing more than one-half of one percent alcohol by volume but not more than three and two-tenths percent alcohol by weight, except where a local option election was held on a parishwide, ward or other basis, and an ordinance was subsequently adopted by the local governing authority, specifically including but not limited to parishwide ordinances adopted by the police jury, and was in effect prior to 1948 pursuant to the results of any such election prohibiting the sale of beverages containing alcohol of more than one-half of one percent by volume. It is the solemn expression of the legislative will that this section or any other provision of this chapter shall not be construed in any way whatsoever as or have the effect of vitiating or affecting any such ordinance adopted and in effect prior to 1948 pursuant to a local option election held on a parishwide, ward or other basis which ordinance prohibited the sale of beverages containing alcohol of more than one-half of one percent by volume, and that accordingly such ordinances which were adopted and were in effect prior to 1948 are hereby revived, and any court decisions to the contrary are hereby expressly legislatively overruled."
In the Tolar case the Court noted that the enactment of Act 325 of 1974 repealed that section of Act 41 of 1974 which attempted to amend and reenact La. R.S. 26:588 (1950). That portion of Act 41 dealing with La. R.S. 26:588 is, therefore, not a part of the act we consider.
[2] The four propositions read:

"(1) Shall the sale of beverages of low alcoholic content containing more than three and two-tenths percent alcohol by weight and not more than six percent alcohol by volume be permitted?
"(2) Shall the sale of beverages containing more than one-half of one percent alcohol by volume but not more than three and two-tenths percent alcohol by weight be permitted?
"(3) Shall the sale of beverages of high alcoholic content containing more than six percent alcohol by volume for consumption on the premises be permitted?
"(4) Shall the sale of beverages of high alcoholic content containing more than six percent alcohol by volume be permitted by package only and not for consumption on the premises?"
[3] Act 17 of 1935, 1st Ex.Sess., § 4.
[4] See Knapp v. Jefferson-Plaquemines Drainage Dist., 224 La. 105, 68 So.2d 774 (1953). See also Schwegmann Bros. v. Louisiana Board of Alcoholic Beverage Control, 216 La. 148, 43 So.2d 248 (1949).
[5] For a discussion of classification as violative of the equal protection right, see Louisiana & Arkansas Railway Company v. Goslin, 258 La. 530, 246 So.2d 852 (1971).
[1] A full copy of Act 41 of 1974 is contained in an appendix to this opinion.