424 So.2d 1053 (1982)
Harold L. JOHNSTON, Plaintiff-Appellant,
v.
MOREHOUSE PARISH POLICE JURY, et al., Defendants-Appellees.
No. 15076-CA.
Court of Appeal of Louisiana, Second Circuit.
November 29, 1982.
Writ Denied January 28, 1983.
*1054 McLeod, Verlander & Dollar by Robert P. McLeod, Monroe, for plaintiff-appellant.
Rankin, Yeldell, Herring & Katz by James E. Yeldell, Bastrop, for defendants-appellees.
Before PRICE, JASPER E. JONES and SEXTON, JJ.
SEXTON, Judge.
Appellant Harold L. Johnston was prohibited from selling beer by an ordinance enacted by appellee Morehouse Parish Police Jury pursuant to a local option election. He now brings this appeal to challenge the lower court's determination that both the ordinance and the election were legally valid and binding. We find that the local option election which was the predicate of the prohibitory ordinance was not authorized by law. We therefore reverse.
Appellant Harold L. Johnston is the owner and operator of Community Grocery, a small store located approximately sixteen miles north of Bastrop, Louisiana, in Ward Two of Morehouse Parish. Community Grocery has been the site of a rural store for over fifty years, although Mr. Johnston has been the proprietor of the establishment only since January 1, 1979. At the time he began his proprietorship there in 1979, Mr. Johnston did not own a license to sell liquor. On May 17, 1979, the Morehouse Parish Police Jury granted Mr. Johnston a license to sell beer containing not more than 3.2% alcohol by weight. Mr. Johnston renewed his license in December of 1979, 1980 and 1981.
*1055 Mr. Johnston's store is the only beer outlet in Ward Two. Furthermore, the store is located two miles from the Louisiana-Arkansas border, directly opposite Ashley County, Arkansas, a so-called "dry" county in which alcoholic beverages are legally sold only in private clubs. Arkansans account for 98% of Mr. Johnston's total beer sales.
The record reflects that Mr. Johnston was unable to make a profit during the initial five to six month period in which he operated his store without a license to sell liquor. Although Mr. Johnston also sells gasoline and a full line of groceries, he testified at trial that beer sales account for 90 to 95% of his total yearly gross of $570,000. Mr. Johnston asserted at trial that, if beer sales were to be outlawed, he would remain in business "just long enough to close the doors."
On October 27,1979, a special option election was held in the Ward Two of Morehouse Parish. The following question was one of four propositions presented the electorate at that election:
"Shall the sale of beverages containing more than one-half of one percent alcohol by volume but not more than three and two-tenths percent alcohol by weight be permitted?"
The voters responded negatively by a margin which is not stated in the record. On October 12, 1981, the Morehouse Parish Police Jury enacted Ordinance 1053 pursuant to this election mandate. The ordinance prohibited the sale in Ward Two of alcoholic beverages of varying degrees of potency, including "any beverage containing more than one-half of one percent (½ of 1%) alcohol by volume but not more than three and two-tenths percent (3.2%) by weight." The ordinance took effect on November 14, 1981, with law enforcement officials informing Johnston that they were ready to effectuate immediate enforcement.
Plaintiff originally sued to have Ward Two's special election invalidated on the basis of alleged procedural irregularities. These claims were found by both the trial court and then the Second Circuit to be devoid of merit. See Johnston v. Morehouse Parish Police Jury, 401 So.2d 517 (La.App. 2d Cir.1981).
Harold Johnston subsequently filed this suit on November 10, 1981 alleging that Ordinance 1053 was unauthorized under state law; he prayed that the ordinance be declared invalid and that the police jury be permanently enjoined from enforcing its provisions. The trial court issued a temporary restraining order precluding the ordinance's enforcement and ordered the Morehouse Parish Police Jury to show cause why injunctive relief should not issue. At that hearing, the trial court upheld the validity of Ordinance 1053 and denied appellant injunctive relief.
The issue to be resolved here is whether Harold Johnston was legally prohibited from selling 3.2% beverages. In answering this question we focus not on the prohibitory ordinance enacted by the Morehouse Parish Police Jury, but on the local option election which was the legal predicate of the ordinance enacted. This is because the powers of political subdivisions to ban the sale of 3.2% intoxicants is only that which is statutorily delegated to them by the state. The sole authorization for parish police juries to prohibit such sales by ordinance is contained in LSA-R.S. 26:595 which permits police juries to enact such ordinances pursuant to "an election held under the provisions of this Chapter." Thus, the power to pass prohibitory ordinances is dependent upon an election authorized by Title 26 of the Revised Statutes. If a valid election was conducted, then the ordinance is valid. Conversely, if the election was not authorized by Title 26, the Morehouse Parish Police Jury was not empowered to pass the ordinance. Consequently, our sole inquiry is: Was the Morehouse Parish Police Jury legally empowered by Title 26 to conduct the Ward Two option election which served as the legal predicate for the sales ban contained in Ordinance 1053? We find, for the following reasons, that Morehouse Parish Police Jury was not thus empowered.
The state has the ultimate power to regulate and prohibit the sale of intoxicants. The logical corollary of this premise *1056 is that political subdivisions of the state possess only such regulatory or prohibitory powers as are expressly delegated to them by the state through statutory enactment. See Harper v. State Dept. of Revenue, 328 So.2d 669 (La.1976); State v. Wright, 305 So.2d 406 (La.1974); State v. Sissons, 292 So.2d 523 (La.1974). Therefore, in the absence of an applicable statutory delegation, we must summarily conclude that the instant option was unauthorized and thus null and void.
The statute urged by appellees as the source of their authority to conduct an option election on prohibiting the sale of 3.2% beverages is LSA-R.S. 26:586.1. This statute provides that:
"A. In addition to the procedure for calling local option elections by petition of twenty-five percent of the qualified electors residing in any ward or incorporated municipality an election may be ordered to determine whether or not the business of manufacturing, producing, rectifying, distilling, blending, using, storing, distributing and selling alcoholic beverages containing more than one-half of one percent alcohol by volume but not more than three and two-tenths percent alcohol by weight, shall be conducted and licensed therein. Notwithstanding the provisions of R.S. 26:588, the ballot, in addition to the propositions contained in R.S. 26:587, shall contain the following proposition:
`Shall the sale of beverages containing more than one-half of one percent alcohol by volume but not more than three and two-tenths percent alcohol by weight be permitted in ....
YES
 NO
"B. This election shall be separately called and held, and the result separately binding for each incorporated municipality, and for the unincorporated balance of the ward. No such election shall be held on a parish-wide basis or for any subdivision other than the ones above mentioned.
"C. No such election shall be held for the same subdivision oftener than once in every two years.
"D. Any local option election called under the provisions of this Chapter shall only be called upon a petition of twenty-five percent of the registered voters living in the respective political subdivision."
Morehouse Parish's argument is that this statute constitutes a substantive grant of authority to every local subdivision in the state to prohibit the sale of 3.2% beverages pursuant to local option election. Appellant Harold Johnston's argument is that this statute provides nothing more than a procedural apparatus by which a small number of enumerated parishes in the statenot including Morehousecan exercise their already existing power to prohibit the sale of 3.2% intoxicants pursuant to local option. The substance of the dispute is thus: A grant of substantive power to all local subdivisions versus a procedural device made available to those few parishes already possessing that substantive power. We conclude, upon the basis of a contextual analysis of the pertinent statutes, that appellant's view is correct.
We reach our conclusion guided by venerable principles of civilian constructionprimarily the rule that statutes pertaining to the same subject matter are to be read in pari materia. LSA-C.C. Art. 17. Thus statutory provisions referring to a common subject are to be construed in such a fashion as to infuse them all with efficacy and meaning and in such a manner as will produce a unified and coherent import. As a general rule, the legislature does not enact vain and useless legislation. Staton v. Hutchinson, 370 So.2d 106 (La.App. 1st Cir. 1978). Judicial construction must aim to attribute reasonable meaning to an entire statutory framework and context. McGee v. Police Jury of Caddo Parish, 63 So.2d 153 (La.App. 2d Cir.1953). Thus, statutory provisions are to be given effect wherever possible and if statutes can be reconciled by fair and reasonable interpretation this should be done. Fakier v. Picou, 166 So.2d *1057 257 (La.1964); Johnson v. Sewerage District No. 2 of Parish of Caddo, 120 So.2d 262 (La.1960). The construction of a particular statute which creates a statutory inconsistency should be avoided when an interpretation can be adopted which will not do violence to the plain words of an act. Legros v. Conner, 212 So.2d 177 (La.App. 3d Cir. 1968). Any construction that engenders a statutory conflict should be eschewed in favor of a construction which produces logical harmony and preserves the meaning and effectiveness of each statutory provision. Johnson v. Collector of Revenue, 165 So.2d 466 (La.1964); Fruge v. Muffoletto, 137 So.2d 336 (La.1962); City of New Orleans v. Board of Supervisors of Elections for Parish of Orleans, 43 So.2d 237 (La.1949).
Under the aforementioned rules of statutory construction, we are compelled to assess LSA-R.S. 26:586.1 in the context of LSA-R.S. 26:588 and LSA-R.S. 26:581.1 which address the same issue which is central to LSA-R.S. 26:586.1. We furthermore presume that the legislature intended that LSA-R.S. 26:586.1, LSA-R.S. 26:588, and LSA-R.S. 26:581.1 interact in a rational fashion and not render each other inoperative, superfluous and meaningless.
LSA-R.S. 26:588 provides a general rule which bans all parishes from prohibiting the sale of 3.2% alcoholic beverages. It provides, more particularly, that:
"Prohibition of the sale of any or all alcoholic beverages by a local option election held pursuant to this chapter shall not operate as a prohibition of the manufacturing, producing, using, distributing, storing, or selling of beverages containing more than one-half of one percent alcohol by volume but not more than three and two-tenths percent alcohol by weight....."[1]
LSA-R.S. 26:581.1[2] provides a very specific exception to the general rule of LSA-R.S. 26:588 that political subdivisions cannot prohibit the sale of 3.2% intoxicants. LSA-R.S. 26:581.1 expressly provides a list of those parishes which, contrary to the general rule, may ban the sale of 3.2% intoxicants pursuant to local option. The text of that statute provides as follows:
"A. The provisions of this Chapter authorizing the prohibition of alcoholic beverages on a parishwide basis and the prohibition of beverages containing more than one-half of one percent alcohol by volume but not more than three and two-tenths percent alcohol by weight shall not apply and shall not be available for use in the parishes of or the wards or municipalities in any of the parishes of the state except Beauregard, Washington, Rapides, Natchitoches, Red River, Grant, LaSalle, East Carroll, West Carroll, Bienville, Jackson and Winn Parishes.
"B. In the exercise of local option pursuant to the provisions of this Chapter in the wards and incorporated municipalities located in all parishes except Beauregard, Washington, Rapides, Natchitoches, Red River, Grant, LaSalle, East Carroll, West Carroll, Bienville, Jackson and Winn as provided in Subsection A of this Section, three propositions and no others shall appear on the petition provided for in R.S. 26:583 and on the ballot provided for in R.S. 26:587, which propositions shall be limited to propositions 1, 3, and 4 contained in R.S. 26:583 and R.S. 26:587, respectively."
*1058 Appellee's contention, to reiterate, is that LSA-R.S. 26:586.1 authorizes local subdivisions in all parishes of the stateincluding Morehouse Parishto ban the sale of 3.2% intoxicants pursuant to local option. In assessing appellee's suggested construction of LSA-R.S. 26:586.1 we must refer to LSA-R.S. 26:581.1 and LSA-R.S. 26:588 which were contemporaneously effective with LSA-R.S. 26:586.1. Having conducted this analysis, we are constrained by a single compelling and irresistable observation to reject appellee's contention and invalidate the instant prohibition. Under the construction of LSA-R.S. 26:586.1 urged by appellee, LSA-R.S. 26:586.1 would implicitly repeal LSA-R.S. 26:588 and render LSA-R.S. 26:581.1 meaningless.
LSA-R.S. 26:586.1, as construed by appellees, is directly contrary to LSA-R.S. 26:588. Appellees contend that LSA-R.S. 26:586.1 authorizes local options to prohibit the sale of 3.2% intoxicants in all parishes of the state; LSA-R.S. 26:588 expressly and absolutely bans such prohibitory local options in all parishes. LSA-R.S. 26:586.1, as construed by appellees, transforms LSA-R.S. 26:581.1 into inoperative surplusage. LSA-R.S. 26:581.1 enumerates with painstaking specificity the 12 parishes in which such elections can be conducted. It is manifest, of course, that this detailed enumeration in LSA-R.S. 26:581.1 is needless surplusage if the legislature intended that local options on 3.2% intoxicants could be held in all parishes.
In addition to rendering LSA-R.S. 26:588 and LSA-R.S. 26:581.1 inoperative individually, appellee's suggested construction of LSA-R.S. 26:586.1 also disrupts the legislative scheme formed by the interaction of these two statutes. LSA-R.S. 26:588 provides the general rule that this type of local option in not allowed in any parish of the state, and LSA-R.S. 26:581.1 delineates the specific exceptions to this general ban, permitting this type of option in 12 enumerated parishes. Thus, the legislative rule formed by the interaction of these statutes is that local options may prohibit the sale of 3.2% intoxicants solely in the 12 parishes enumerated in LSA-R.S. 26:581.1. LSA-R.S. 26:586.1 as construed by appellees, would of course thwart the legislative rule formed by the interaction of LSA-R.S. 26:588 and LSA-R.S. 26:581.1 by stating that local options may ban the sale of 3.2% intoxicants in all parishes.
In summary, we reject the contention that LSA-R.S. 26:586.1 was intended to be a grant of substantive authority to all parishes in the state to prohibit the sale of 3.2% intoxicants by local option. We find it more plausible that LSA-R.S. 26:586.1 was a procedural apparatus. It was intended not to implicitly repeal LSA-R.S. 26:588 and render LSA-R.S. 26:586.1 superfluous but to implement the substantive power to conduct prohibitory local optionsin those parishes which already possessed that substantive power pursuant to LSA-R.S. 26:581.1.
We are aware that the Third Circuit in Wyatt v. Vernon Parish Police Jury, 341 So.2d 468 (La.App. 3d Cir.1977), reached a contrary conclusion with respect to the applicability of LSA-R.S. 26:586.1. In our view Wyatt fails to adequately answer the problems raised in our analysis. Furthermore, it does not consider the issueessential to our evaluation of the caseof whether LSA-R.S. 26:586.1 was intended to nullify both LSA-R.S. 26:581.1 and LSA-R.S. 26:588.
Likewise in Ward v. West Carroll Parish Police Jury, 347 So.2d 68 (La.App. 2d Cir. 1977), this court followed Wyatt in upholding a 3.2% sales ban in West Carroll Parish. Of course, Wyatt dealt with a parish not listed in LSA-R.S. 26:581.1 and Ward did. But both decisions are subsequent to Nomey v. State, 315 So.2d 709 (La.1975), and thus must rely on LSA-R.S. 26:586.1 as authority for the ban. Therefore these decisions hold that LSA-R.S. 26:586.1 is a grant of substantive authority to prohibit the sale of 3.2% beverages state wide.
Thus Ward and Wyatt, while not addressing the issue, tacitly hold that LSA-R.S. 26:586.1 implicitly repeals LSA-R.S. 26:588, a result which we have demonstrated was clearly not intended by the legislature in *1059 passing LSA-R.S. 26:586.1. Therefore, we decline to follow Wyatt and are now of the view that Ward should be overruled insofar as it is inconsistent herewith.
We parenthetically note Smith v. Lincoln Parish Police Jury, 327 So.2d 641 (La.App. 2d Cir.1976), is not applicable to this decision as that case did not involve the question of the validity of a 3.2% sales ban. In fact, that case upheld the validity of an option election in which a sales ban on 3.2% beverages was expressly omitted from the option ballot.
Accordingly, we reverse the trial court and declare invalid the 1979 option election conducted in Ward Two of Morehouse Parish insofar as it prohibits the sale of 3.2% beverages and likewise declare that Section 4 of Ordinance 1053 of 1981 enacted pursuant thereto is void; and further permanently enjoin the defendant from enforcing Section 4 of Ordinance 1053 of 1981.
REVERSED AND RENDERED, at appellee's costs.
NOTES
[1] LSA-R.S. 26:588 was legislatively repealed by Act 1980, No. 663, § 1. However it was still effective in 1979 when the Morehouse Parish Police Jury conducted the local option which is the subject of this proceeding.
[2] This statute was held unconstitutional in its entirety by Nomey v. State, 315 So.2d 709 (La. 1975), but is important to our analysis of legislative intent as it was enacted earlier in the same legislative session as LSA-R.S. 26:586.1 in 1974. Also note that LSA-R.S. 26:588 was previously enacted in 1972.

A consideration of Nomey is not necessary in this analysis even though we are involved with a factual situation which is obviously post-Nomey. Our sole purpose here is to determine the legislative intent in 1974 when LSA-R.S. 26:581.1 and LSA-R.S. 26:586.1 were enacted. Thus a discussion of Nomey, a 1975 decision, would add nothing to the question.